# MARYLAND REPORTS.

## DECEMBER TERM, A. D., 1854.

### THE GERMANIA vs. THE STATE.

An incorporated club owning and keeping a billiard table, at which the members, and strangers introduced by members, play, at a charge of six-and-a-quarter cents for a game of fifty, to be paid by the members only, which charge, however, does not defray the expense of keeping the table, is liable to the tax imposed by the acts of 1824, ch. 64, and 1826, ch. 219, upon "persons keeping or exhibiting for use a billiard table or tables."

In the view of the law, a corporation is a *person*, and the words, "keeping or exhibiting for use," in these acts, must be taken distributively; that is, keeping for use *or* exhibiting for use.

It is in the power of the State to tax the amusements of the people either for the purpose of revenue or as a police regulation, and with the judicious exercise of this power in any particular case the courts have nothing to do.

APPEAL from the Court of Common Pleas for the city of Baltimore.

This was an action of *debt*, docketed by consent of parties in the name of the State, against the appellant, for the purpose of trying the right of the defendant to have and use a billiard table without taking out a license. The cause was submitted to the court below upon a case stated, and the facts are sufficiently set forth in the opinion of this court. The court, (MARSHALL, J.,) gave judgment for the State, and the defendant, in pursuance of the right reserved in the agreement, appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

V. 7

*Frederick W. Brune* and *Geo. W. Dobbin* for the appellant, stated, that the question to be tried is, whether the Germania, in having and using a billiard table in the manner set forth in the case stated, "keeps or exhibits for use" a billiard table within the true intent and meaning of the acts of 1824, ch. 64, and 1826, ch. 219? and then argued:

1st. That the intention of the legislature is to govern the construction of the statutes in question, *(Dwarris on Statutes,* 694, 737, 739, 743; 1 *Bl. Com.,* 59;) that the words of the statutes being ambiguous, that intention is to be gathered from the occasion and the necessity of the law, and that these being revenue laws inflicting fines and penalties, the interpretation is to be made in favor of the subject.

2nd. That the acts in question contemplate the taxing of such billiard tables only as are kept or exhibited for use by the public for gain, and not such as are kept for the private use of the owners thereof, and are not intended for gain to anybody. The act of 1797, ch. 110, to *prevent excessive gaming,* expressly excepts *billiard tables,* and so does its supplement, the act of 1803, ch. 75, and also the act of 1809, ch. 138, sec. 7, and the act of 1826, ch. 88, to *prevent gaming.* The act of 1824, ch. 64, is a transcript of the act of 1798, ch. 113, and the act of 1826, ch. 219, is substantially the same and relates particularly to the city of Baltimore. The tax imposed by these acts is not upon the *tables,* but upon the *business* of *keeping the tables* for public use, for the purpose of gain to the *keepers.* It is imposed upon "any *person* or *persons* keeping *or* exhibiting for use a billiard table;" the term "*or*" is *alternative* or *similitudinary,* and the intent clearly was to tax the *keepers* of such tables who exhibit them for public use, and not to tax billiard tables kept for *private use* alone. The appellant here is an *incorporated club,* and even if it comes within the description of "*person* or *persons*" mentioned in these acts, it still must stand in the character of a private gentleman who keeps in his own house a billiard table for the amusement of himself and friends. No person except a member of the club, or some stranger intro-

duced by him, can play upon this table, and the charge for the game is exclusively upon the members and never has been sufficient to defray expenses. To such a case, we say, the acts in question were not intended to apply. The act of 1841, ch. 194, sec. 5, says, that the keeper of any stallion for use must obtain a license, but surely it does not mean to say that a gentleman may not keep such an animal on his own farm for his private use without first obtaining a license therefor. So in the acts in question; the keepers of billiard tables there intended to be taxed, mean those who keep and exhibit them for public use for the purpose of profit and gain.

*Charles J. M. Gwinn* and *James A. Buchanan* for the State.

It is admitted, that the appellant keeps a billiard table for the use of its members, at which strangers, introduced by members, have a right to play. A charge of six-and-a-quarter cents is made for each game of fifty which is paid by the *loser.* Now clearly, by its own showing, the appellant is within the letter of both the acts in question. It keeps and exhibits a billiard table for use, and it matters not whether the table so kept be open to all who choose to pay for playing at it or is confined to the members of a certain club, and such friends as members may see fit to introduce. The statutes make no exceptions in favor of any particular use, whether it shall be public or private. A table need not be a *public* gaming table to come within the provisions of these laws.

The true rule of construing statutes is to adhere as closely as possible to the literal meaning of the words used, and the courts cannot depart from the strict and grammatical and proper construction of the language used in a statute, unless compelled to do so by evident necessity resulting from the apparent intention of the legislature. 1 *Hudson & Brooke's Irish Q. B. Rep.*, 648, *Warburton vs. Loveland.* 11 *Eng. Law & Eq. Rep.*, 63, 65, *Gundry vs. Pinniger.* Now apply this rule to the statutes in question, and does not the case of the appellant come fairly within the strict grammatical meaning of the language used in them? A corporation must be

regarded as a *"person"* within the meaning of these acts, and the appellant, by its own showing, has a billiard table *kept and exhibited for use,* which is all that the strict letter of the laws requires; it is for the appellant to show the "evident necessity" resulting from the apparent intention of the legislature which would authorise the court to depart from the plain and obvious meaning of the words used in the acts. The sole reason urged is, that this table, (thought kept for use,) is a private one, and that the legislature only intended to lay a tax upon *public* billiard tables or those who keep such tables as a means of livelihood. Now conceding that this is a private table, (which in point of fact is not so,) by what authority can the court interpolate the word "public" into these acts? It must be conceded that the legislature had the right to tax all billiard tables, public or private; and if the courts depart from the strict rules of construction, where will they stop, and what kind of billiard tables will be liable to the tax? Who can undertake to define what billiard table is so public that it comes within the provisions of the act, and what one so private that the law cannot reach it? There is nothing to show that the word *"keep"* means to keep for *hire* or *public use;* it has no *technical* meaning and was used by the legislature in no *technical* sense. The 6th section of the act of 1831, ch. 323, says, that no free negro shall *"keep* or carry a fire-lock of any kind" without a license; the act of 1723, ch. 15, sec. 6, forbids masters to suffer their slaves "to *keep* any horses," &c.; and the act of 1806, ch. 81, sec. 1, forbids negroes "to *keep* any dog," &c. In all these cases the word does not mean, keep for hire or public use, and shows that the legislature, in using it, meant to use it in its ordinary sense and signification. It is submitted, therefore, that if the views of the appellant are sustained, and it is decided that this table is not liable to the tax, the laws can be so easily evaded that they will be virtually repealed, and it will be impossible to tax any billiard table, public or private.

We have assumed, thus far, that these acts were to be very strictly construed, and that the appellant's case is embraced

within their terms, even if they were construed with the strictness applicable to penal statutes. But the laws in question are to be much more liberally construed. They are revenue laws, and the true principle of construction applicable to such laws is, "to give them a liberal construction." 8 *Gill*, 314, 318, 321, *Spencer vs. Negro Dennis.*

There has been no decision by the courts of Maryland upon such a case as this, but in several of the States similar acts of their legislatures have been construed by their courts, and a construction placed upon them which would not only subject this table to the tax, but even tables kept by private gentlemen for their own amusement. See 1 *Murphey*, 291, *Sears & others, vs. West.* 1 *Texas Rep.*, 139, *Needham vs. The State.* 3 *English's Rep.*, 222, *Mayers vs. The State.*

LE GRAND, C. J., delivered the opinion of this court.

This is an appeal from a judgment rendered by the Court of Common Pleas for the city of Baltimore, on the following case stated:

"It is admitted in this case, that the defendant is a club, incorporated by the State of Maryland, for literary and social purposes, and that it purchased a billiard table with the funds of the society; that it hires a boy, to keep the game, at $104 per annum, which is a charge upon the club; that members and others playing at a private table are charged six-and-a-quarter cents for a game of fifty; that none but members, and strangers introduced by members for a limited time, are permitted to come to the club and use its billiard table. Strangers are not suffered to pay, but the members introducing them therein pay for the game which they may lose. It is the practice of the players that the losing party shall pay for the game played: the amount received from the billiard table is not, and has never been, equal to the expense of maintaining it. It is further agreed, that if the court shall be of opinion that the Germania is liable to the laws requiring a license to keep a billiard table, then the judgment to be entered for the State; and if it should be of opinion that they do not apply

to it, then the judgment to be in favor of the Germania. Either party to have the right of appeal."

The State claims an affirmance of the judgment in virtue of the acts of Assembly of 1824, ch. 64, and of 1826, ch. 219. By the first it is provided, that "the clerk of each county be, and he is hereby empowered and authorised to grant a license to such person or persons as may apply for permission to keep a billiard table." The 3rd section of the same act provides, "that any person *keeping* or *exhibiting for use* a billiard table or tables" without first obtaining a license, "shall forfeit and pay the sum of five hundred dollars." The act of 1826, ch. 219, authorises the granting of a license "to such person or persons as may apply for permission to keep a billiard table, for which license there shall be paid the sum of one hundred dollars," &c. The 3rd section is substantially the same as that of the act of 1824. It subjects any person or persons "*keeping or exhibiting for use a billiard table or tables*," without having first obtained a license, to the penalty fixed by the law.

The question for our determination is, whether, under the facts agreed upon, the appellant is liable to the tax imposed upon the keeper of a billiard table? We concur with the court below that it is. In the view of the law a corporation is regarded as a *person*. *Louisville Railroad Co. vs. Letson,* 2 *Howard's S. C. Rep.,* 508. The appellant therefore is covered by the *descriptio personæ* of both acts of Assembly, and the only question then is, does it *keep,* or *exhibit for use,* a billiard table? The words of both acts are, "keeping or exhibiting for use a billiard table," which must be taken distributively; that is, keeping for use, or exhibiting for use.

Now it is *admitted* by the case stated, that the appellant *does keep a table for use, and that it is used.* It is, therefore, clear, that the case is covered by the language of the acts of Assembly. This is not denied on the part of the appellant, but it is said it was not the *intention* of the legislature to cover by its action such a case as this. There is nothing *apparent* which justifies this conclusion. The language of the acts is

positive and general, covering every case and excepting none.
It was also said in argument that the club ought to be likened
to a private gentleman, who keeps in his own house a billiard
table for the amusement of himself and friends.   The simi-
larity of the cases is far from obvious to us.   A private gen-
tleman who has a billiard table, does not charge his friends
with any sum for the privilege of playing on it.   In the case
before us there is, on the members of the club, a charge made,
and although it is inadequate to meet all the expenses attendant
on the keeping of the table, nevertheless, it is a charge.   If
the appellant has the right to charge six-and-a-quarter cents
"for a game of fifty" without taking out a license, why should
it not, by a parity of reasoning, be allowed to charge a dollar,
or five dollars, with the same exemption?   The principle which
allows the charge in one case, authorises it in another.   The
mere fact that the rate of charge is insufficient to pay the
expenses, constitutes no argument in favor of the exemption
from liability to take out a license.   It is possible, and it is
by no means unreasonable to suppose, that it frequently has
been the case, and will be again, that those who have taken
out a license, and kept a billiard table for the avowed and sole
purpose of gain, have failed to realise a sufficiency to pay their
expenses, and yet, in such a case it could not be pretended,
the inadequacy of receipts would be an available reason why
they should be relieved from the license.

It is not for us *in this case* to decide whether, under our
acts of Assembly, *any* billiard table can be kept and used in
this State without a license?   The question is not now before
us, and it will be time enough to dispose of it when it shall,
if ever, arise.   But in this connection, however, we refer to
a decision in a sister State, without meaning to be understood
as intimating our concurrence in it to the full extent to which
it goes.   It has been held, under a law similar to that of
Maryland, by the Supreme Court of North Carolina, in the
case of *Sears & Others, vs. West,* 1 *Murphey's Rep.,* 291, "that
a billiard table erected and used merely for the purpose of
amusement, is liable to the tax imposed 'on billiard tables,'

in the same way as if used for the purpose of gaming." In that case the plaintiffs were the owners of a table, which they caused to be erected at their own expense—not for any purpose of emolument, or to be employed as a gaming table, but for their private and individual amusement—and yet the court held, that it was a case covered both by the language and policy of the act of the State imposing a tax on billiard tables. It is in the power of the State to tax the amusements of the people, either for the purpose of revenue or as a police regulation. 13th *Article of Bill of Rights*. With the judicious exercise of this power, in any particular case, the courts have nothing to do; they fulfil their office when they give effect to the constitutionally expressed will of the legislative branch of the government.

*Judgment affirmed.*