WILLIAM T. S. CURTIS, GEORGE W. F. SWART-
ZELL, ADOLPH A. HOEHLING, JR., VERNON
E. HODGES AND JOHN L. WEAVER
*vs.* ANNA G. MACTIER.

*Statutes; unconstitutional provisions; when whole Act affected;
title; Constitution, Art. 3, sec. 29. Taxation; equality of;
Bill of Rights, Art. 15; taxing districts. Constitution-
ality of Acts; test. Municipal corporations; Acts
incorporating. Acts of 1910, Ch. 382, incor-
porating the town of Chevy Chase.*

The Act of 1910, Ch. 382, is entitled "An Act to incorporate
the village of Chevy Chase", and among numerous provisions
and sections includes in section K provisions that withhold
from the village the power to tax or assess the property east
of a designated line; but requires the County Commissioners,
under certain conditions, annually to make a special levy,
not to exceed a fixed rate on the property of the designated
district. It was *held,* that this section K was invalid, under
section 29 of Art. 3 of the Constitution, because not included
in the title of the Act.                              p. 393

Section K of Ch. 382 of the Acts of 1910, incorporating the
village of Chevy Chase, denying the village authorities the
power to tax property in a certain district, and giving the
power to the County Commissioners to levy a tax up to a
fixed rate, provided they are requested to do so by a certain
number of the resident taxpayers of the district, is unconsti-
tutional under Article 15 of the Bill of Rights relating to
the equality of taxation.                              p. 394

A taxing district implies a district which is legally subjected
to some taxes, and which can not either by its own volition or
in any other way escape the payment of some legally imposed
tax.                                                   p. 396

The test of the constitutionality of an act is not what is being
done under it at the time, but what might be done under it.
                                                       p. 397

An entire act ought not to be stricken down because some of
its provisions are void, unless they are so connected together
in subject-matter, meaning or purpose that it can not be pre-
sumed the legislature would have passed one without the
other.                                           p. 398

This section, with the tax exemption, is so essentially con-
nected with the whole scheme of the act that it can not be
presumed the act would have been adopted without it; and
since this section is unconstitutional the whole act must fail.

pp. 398-399

The title of an act need not give an abstract of its contents;
if all the sections of the law, however numerous, refer and are
germane to the subject-matter described in the title, it will be
considered as embracing but a single subject and as satisfying
the requirements of section 29 of Article 3 of the Constitu-
tion.                                            p. 393

When the title of an act declares it to be for the purpose of
incorporating a certain town there named, it is ample enough
to embrace all the provisions that relate to the organization
of the corporate body and to the administration of its affairs
according to the ordinary course of conduct of a municipal
corporation.                                     p. 393

*Decided April 5th, 1911.*

Appeal from the Circuit Court for Montgomery County
(URNER and MOTTER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE and PATTISON, JJ.

*Arthur Peters* (with whom were *Alby Henderson* and
*John A. Garrett,* on the brief), for the appellant.

*Charles L. Frailey* and *Charles Cowles Tucker* (with
whom was *Robert B. Peters,* on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellee, a resident of the village of Chevy Chase, in Montgomery county, Maryland, and the owner of real and personal property in said village, subject to assessment and taxation for municipal purposes, against the appellants, claiming to act as members of the Board of Trustees of the said village of Chevy Chase; the bill alleges that the act of incorporation of said village is unconstitutional and void, and the prayer of the bill is that it be so declared by the Court, and that the appellants be enjoined from acting or attempting to act as members of said Board of Trustees, and from assessing, levying and collecting or attempting to assess, levy and collect taxes upon the assessable property of the appellee in said village, or upon such property of other owners thereof in said village. The defendants answered the bill, and the case was submitted on bill, exhibits and answer.

The act of incorporation which is assailed is Chapter 382 of 1910, and its title is, "An Act to incorporate the Village of Chevy Chase, in Montgomery County, Maryland." The first section of that act provides that what is there called a "plan of municipal control" should be submitted to the vote of the residents of said village of Chevy Chase, possessing the qualifications prescribed for voters by the laws of Maryland, "in accordance with the referendum" thereinafter prescribed, and that if said plan should receive a majority of the votes cast at the election therein provided for, it should become operative upon such adoption and entry thereof upon the land records of Montgomery county. The plan is an elaborate scheme of government containing thirteen sections.

Section A declares the inhabitants of the village of Chevy Chase to be a body corporate by the name of "The Village of Chevy Chase", with the usual corporate powers and privileges.

Section B provides for the annual election by the qualified voters of said village, on the first Monday in May, 1910, and annually thereafter on the same day, of five persons from

said body of voters, one of whom shall be elected as president, to constitute a board of trustees for said village for the term of one year. This section also makes definite provision for methods of procedure by the Board of Trustees, and for the election by them of subordinate officers and for their compensation.

Section c defines the duties of the president of the Board of Trustees, and confers upon him power and authority to try. and determine all violations of the village ordinances, in the same manner as if he were a justice of the peace.

Section D provides that the Board of Trustees may enact ordinances for the good government of the village, for the preservation of peace and order, for the opening, closing, changing, grading and improving of streets, sidewalks and alleys; for process of condemnation where necessary; for street lighting and fire protection; for the establishment of building lines and regulations; for protecting the purity of the water supply of the village, and generally for any purpose necessary to the proper government of a residential suburb of a large city, including the raising of revenue for current expenses, subject to limitations thereinafter contained in said plan of municipal control.

Sections E, F and G relate to the details connected with the maintenance and improvements of the streets and sidewalks, and the use of the streets by electric railways and other vehicles, and by public service corporations.

Section H relates to the acquisition of property for municipal purposes and the construction of works for those purposes.

Section I confers authority upon the board of trustees to contract with the Chevy Chase Club for certain annual payments by said club to said board for municipal purposes, in consideration of the use by said club of the streets and roads of said village; also to enter into a similar contract with the Chevy Chase Land Company in lieu of taxes upon certain of its property in said village.

Section J provides for a triennial assessment of all real
and personal property in said village, except that part of the
area of said village which lies north and east of the Broad
Branch road and the Brookville road, and that a tax not
exceeding fifty cents in the hundred dollars should be levied
annually upon said property so assessed, to be collected as
therein prescribed.

Section K will be transcribed in full, and is as follows:

Section K. That the County Commissioners of Mont-
gomery county at the time of the annual tax levy for this
year, and each succeeding year thereafter, are authorized,
directed and required to make a special levy for such amount
as may be mentioned in the petition hereinafter referred
to on each one hundred dollars ($100) of the whole of the
assessable real and personal property of the part of the
village of Chevy Chase, in Montgomery county, which lies
each of the Broad Branch and Brookeville roads, as herein-
before described, to be collected as other taxes in said county
are collected, and to be paid over by the said County Com-
missioners to the treasurer of the Chevy Chase Improve-
ment Association upon his giving bond for the faithful per-
formance of his duties, to be approved by the Judge of the
Circuit Court of said Montgomery county, in such penalty
as such judge shall fix, to be used by said association exclu-
sively for the betterment of the streets, roads, sidewalks,
parkways, drainage, sanitation and other improvements in
said part of the village of Chevy Chase, and for the fur-
nishing of police protection and public services, including
the removal of ashes, garbage and other refuse for the bene-
fit of the residents thereof; provided, fifteen (15) or more
persons residing in said part of the said village, and owning
such taxable property therein, shall, prior to each annual
levy, petition said County Commissioners, asking such spe-
cial levy to be made, and in said petition stating the amount
desired to be specially levied; provided, the same shall not
exceed the sum of forty (40) cents on each one hundred
dollars ($100) of assessable property as aforesaid; provided,

further, that the board of trustees of the village of Chevy Chase shall be under no obligation to spend any of the money under their control for public purposes for the creation or betterment of roads, streets, sidewalks, parkways, drainage, sanitation, or other improvements in said part of the village of Chevy Chase, or for the furnishing of police protection and public services; all the provisions, however, of section 5 *shall be in force as to all property* lying east of said Broad Branch and Brookeville roads, except that the repairs to macadamized streets and sidewalks crossing and gutters shall not. be charged against the general fund of the village, but shall be paid out of the moneys coming to the hands of the treasurer of the said Chevy Chase Improvement Association; provided, further, that there shall be paid annually by the County Commissioners of Montgomery county to the treasurer of the said Chevy Chase Improvement Association, on or before the first day of January, 1911, and on or before the first day of January in each and every year thereafter, the full amount of road tax levied or imposed upon the assessable real estate within the limits of Chevy Chase lying east of the Broad Branch and Brookeville roads, as hereinbefore set forth.

Section L provides that the County Commissioners for the county, justices of the peace, sheriffs, constables, and all the county and State officers shall exercise their respective functions in said village except as qualified by the other sections of the act, and that the County Commissioners of Montgomery county shall pay annually to the village of Chevy Chase the full amount of road taxes levied or imposed upon the assessable property within the corporate limits of said village except so much as is required by section K to be paid to the treasurer of the Chevy Chase Improvement Association.

Section M provides for extending the limits of the village so as to bring within them certain designated adjacent lands, upon application of a majority in area of the owners of said lands.

Section 2 of the act provided that for the purpose of determining whether said plan of municipal control should be adopted, an election as provided in section 1 of said act should be held on the last Monday in May, 1910, between the hours of six and nine o'clock P. M. under the control of the election supervisors of Montgomery county, and that said supervisors should report the result thereof to the clerk of the Circuit Court for Montgomery county, who should enter the same upon the record of his office, and that thereupon, the plan, if so adopted by a majority of said voters, should become operative and in force.

The required election was held as provided, and the plan of municipal control was adopted, sixty votes being cast for, and fifty-eight against its adoption, and the result of said election was duly reported to the clerk of the Circuit Court for Montgomery county, and was by him duly entered on the record thereof.

The bill refers to another act of the General Assembly of Maryland approved on the same day, April 8th, 1910, being No. 383, and entitled "An Act providing for special levy in Chevy Chase, Md.", but in the view taken by the Circuit Court, it became unnecessary that it should consider that act, and as we concur in the view of the Circuit Court we shall not allude further to that act.

The appellee in her bill urged numerous objections to the validity of the municipal plan act, but of these the two principal were: (1) That it embraces a subject distinct from that described in its title, and (2) that it exempts entirely from municipal taxation assessable property in one of the territorial divisions of said village, in violation of Article 15 of the Bill of Rights, which requires that every person shall "contribute his proportion of public taxes for the support of the government according to his actual worth in real and personal property."

The defendants filed a lengthy answer replying to each paragraph of the bill, but no questions of fact are raised thereby, and the answer really has the effect of a demurrer.

Taking up first the title of the Act, it is embraced in just thirteen words, "An Act to incorporate the village of Chevy Chase, in Montgomery county, Maryland."

It has long been settled that the title of an Act need not give an abstract of its contents, and that if all the sections of the law, however numerous, refer to, and are germane to, the same subject which is described in the title, it will be considered as embracing but a single subject, and as satisfying the requirements of the Constitution in this respect. The title of this Act therefore is ample to include all the provisions that relate to the organization of the corporate body, and to the administration of its affairs according to the ordinary course of conduct in municipal corporations. But section K, which we have fully transcribed herein contains provisions which, so far as we are informed, have never been embraced in any municipal charter in this State, and which are not only not germane to the object and purposes of an ordinary municipal charter, but are alien and repugnant to the principles which have heretofore governed the administration of municipalities in this State. These provisions are so clearly stated and so forcibly condemned as incongruous and violative of section 29 of Article 3 of the Constitution of Maryland, in the opinion of the Circuit Court, that we adopt their language here.

The Court said: "Under that title there are enactments in section K, providing for special levies by the County Commissioners of Montgomery county, upon application of a certain number of residents of a defined area in the village, the payment of the proceeds to an association independent of the municipal trustees, and the further payment to the association of the road tax realized by the county from the area in question. It is perfectly clear that these provisions are not embraced within the description of the subject of the Act contained in its title. The statement of its purpose as being merely to 'incorporate the village of Chevy Chase,' can not by any construction be held sufficient to include legislation which contemplates action by entirely separate agencies, and

which might have been effectually enacted without the incor-
poration of the municipality. It certainly requires no argu-
ment to demonstrate the proposition that the levying and
appropriation of taxes by the County Commissioners in the
manner indicated is a different subject from the incorpora-
tion of a village. The Act under consideration manifestly
undertakes to legislate upon two wholly distinct subjects,
under a title by which only one of those subjects is described.
Even if the title had fully indicated both of the matters pro-
posed to be covered by the Act, the situation would not have
been improved, because this would nevertheless have been in
obvious violation of section 29 of Article 3 of the State Con-
stitution which provides that 'every law enacted by the Gen-
eral Assembly shall embrace but one subject, and that shall
be described by its title.' This constitutional provision has
been frequently construed, and there can be no difficulty in
its application to the statute here involved. The purpose of
the requirement we have quoted from the Constitution has
been repeatedly defined. It is intended to accomplish two
objects: 'The first is to prevent the combination in one Act
of several distinct and incongruous subjects; and the second
is that the Legislature and the people of the State may be
fairly advised of the real nature of pending legislation.'
*Nutwell* v. *Anne Arundel Co.,* 110 Md. 667; *Kafka* v. *Wil-
kinson,* 99 Md. 238; *State* v. *Norris,* 70 Md. 91; *Co. Comms.*
v. *School Commissioners, Worcester Co.,* 113 Md. 305.

In the present case we have a statute which is at variance
with the constitutional design in both of its aspects. The Act
not only embraces more than one subject, but even if they
could both be validly included, they could not be held to be
sufficiently described in the title.

This view is supported in principle by numerous decisions
of the Court of Appeals declaring enactments void which in
our judgment, constituted no more serious infractions of the
organic law than the one now being considered. *Nutwell* v.
*Anne Arundel Co., supra; Somerset Co.* v. *Pocomoke Bridge
Co.,* 109 Md. 1; *Scharf* v. *Tasker,* 73 Md. 378; *Christmas*

v. *Warfield,* 105 Md. 530; *Stiefel* v. *Md. Institute,* 61 Md. 144; *State* v. *C. & P. R. R. Co.,* 105 Md. 478; *Kafka* v. *Wilkinson, supra; Whitman* v. *State,* 80 Md. 410; *State* v. *Schultz Co.,* 83 Md. 58; *State* v. *German Savings Bank,* 103 Md. 196; *State* v. *Benzinger,* 83 Md. 481; *Luman* v. *Hitchens,* 90 Md. 15; *Steenken* v. *State,* 88 Md. 708. We agree with the conclusion of the Circuit Court for the reasons so well stated above, that the provisions in the Act under consideration relating to the levying of taxes by the County Commissioners of Montgomery county, and the payment of the proceeds to the improvement association are invalid.

This brings us to the second objection to the Act, viz., that it violates Article 15 of the Bill of Rights.

It was decided in *Daly* v. *Morgan,* 69 Md. 460, that a City is but the creature of the Legislature, from which its power of taxation, and all other powers, are derived, "that the same power which authorizes the Legislature to make one taxing district of an entire City equally authorizes it to make two or more taxing districts, if in its judgment the public interests require it, * * * and that the principle of equality is fully gratified by making local taxation equal and uniform as to all property within the limits of the taxing district," and hence the Act of 1888, Chapter 98, which prescribed a lower rate of taxation for City purposes in the districts to be annexed to the City of Baltimore, than in its then existing limits, until the year 1900, was held not to be in conflict with Article 15 of the Bill of Rights. Counsel for the appellants contend that the case of *Daly* v. *Morgan* is conclusive of this case in their favor, but we can not agree with that contention. Indeed we draw from it the opposite conclusion. It sustained the power and right of the Legislature to create two or more taxing districts in the same City, with different rates of taxation for municipal purposes; but the Act which was there sustained positively subjected the annexed districts to a fixed rate of taxation to be assessed, levied and collected by the instrumentalities of the municipality, while the Act which is now before us withholds from

the village of Chevy Chase the power to levy any tax what-
ever upon the property east of the designated line, and even
the power to assess the same for taxation, so that such prop-
erty is absolutely exempted from any taxation by the village
of Chevy Chase.

It is true that section к requires the County Commission-
ers of Montgomery county annually to make a special levy,
not exceeding 40 cents on each hundred dollars, upon the
property in the excepted district, *but only provided* that fif-
teen or more resident taxpayers therein shall petition for
such levy, and shall, in their petition, fix the rate of such
levy, thus leaving it to their option whether they should be
taxed at all and, if so, the rate of taxation. If no such peti-
tion is preferred, this district is absolutely exempted from
all municipal taxation whatever. A "taxing district," *ex vi
termini,* implies a district which is legally subjected to some
taxation, and which can not, either by its own volition or in
any other way, escape the payment of some legally imposed
tax. To call the excepted district in this case "a taxing dis-
trict" would not only be a misnomer but a palpable abuse
of terms. The question we are now considering falls directly
within the reasoning of the Court in *Prince George's County*
v. *Laurel,* 70 Md. 443. The Act of 1888, Ch. 244, required
the County Treasurer to pay to the Commissioners of the
Town of Laurel the amount of the tax levied upon real
property within the limits of that town, to be used for the
maintenance of the streets and roads in its limits. The
Court held this to be in plain violation of Article 15 of the
Bill of Rights, and said, referring to the act: "It takes not
only the *road tax* but *all the taxes* levied on the real estate in
the town of Laurel, and applies them not *solely to the roads,*
as was done by the Act of 1870 (considered in *Prince
George's County* v. *Laurel,* 51 Md. 461), but to any other
desirable improvement in the town which the town commis-
sioners might decide proper. * * * It takes the tax levied
for the maintenance of the Courts, the almshouse, the jail,
the public schools, for building bridges and all other expenses

incident to the county's corporate existence, which comes from the assessable real estate within the corporate limits of Laurel, and applies it to the maintenance of the roads in Laurel and such other improvements as the commissioners shall deem proper * * *  It is too plain for argument that such legislation can not be sustained.    It is practically exempting the owners of real estate in Laurel from contribution *pro tanto* to the necessary expenses of the county government.   If it be competent to take the taxes levied upon the real estate in the town for such purposes, all taxes levied on the personal property in the town could be taken for the same object, and thus the citizens of Laurel would, in fact, be relieved from contributing a farthing to the support of the county government; and the whole county expenses would be thrown on those who live in the rural districts, and the rural districts would be indirectly supporting a corporation which gave them no protection or advantages."

The test in all such cases is not what is being done at the time, but what might be done under the challenged act.   It does not appear from the record what is the comparative area, population or wealth of the excepted district, but judging from the plat which is an exhibit in the case the excepted district embraces about one-third of the whole area of the village.   It might well happen that this district might, in time, attract to it the majority of the inhabitants of the village or the greater part of the taxable property of the inhabitants, or both, and in such case a very moderate tax upon the property in that district would be ample to provide for its streets, roads, police protection and public services, to which purposes such tax is to be applied exclusively through the agency of the improvement association, while a very oppressive tax might be required upon the property in the rest of the village to provide for the primary and essential needs of the municipal government.   We have no hesitation in reaching the conclusion that the exemption form taxation of this excepted district is in violation of the Bill of Rights, and that the provisions of section K for levies and payments by the County

Commissioners are invalid under section 29, Article 3 of the Constitution.

It only remains to determine the effect of the elimination of these features of the act upon the body of the act.

It has been held in many cases in this Court, in accordance with the decisions elsewhere that an entire act ought not to be stricken down because one or more provisions are void unless these are so connected together in subject-matter, meaning or purpose, that it can not be presumed the legislature would have passed the one without the other.

In *Nutwell* v. *Anne Arundel County,* 110 Md. 667, Ch. 672 of 1908, provided that it should not be lawful to use upon any of the roads in the county any vehicle except ox carts, horse carts, farm wagons and milk wagons, without first having obtained a license therefor; also that the owners of vehicles so licensed should be exempt from any other tax thereon. The title of the act was, "An Act to require all owners of vehicles using public streets and roads in Anne Arundel county to have a license therefor." The Court held the title misleading and bad, JUDGE BURKE saying: "Under a title to require *all owners* of vehicles using the roads and streets of Anne Arundel county to have a license therefor, there is contained in one section an exemption of a large class of vehicles, and in the other an exemption from all other taxation upon the vehicles licensed. There is not the faintest suggestion in the title of the act to lead anyone to suspect that such exemptions were or might be introduced in the law. In these respects the title is not only too narrow, but it is clearly misleading. Besides this, one of the provisions of the act, that which exempts certain property from taxation, is wholly foreign to the subject-matter described in the title." It was urged that the Court might strike down this exemption if it found it was not fairly comprehended in the title and hold the balance of the act valid, but the Court said: "The tax exemption feature of this act is one of its essential parts, and was no doubt intended to secure its passage. It is inseparably connected with the

whole scheme of the act. It is so important that it cannot be presumed the act would have passed without it. Under such circumstances the rule suggested by the appellee can not be applied."

If it should be applied here it can scarcely be doubted that there would be a total want of power anywhere to tax the excepted district, and even if it could be held that the invalidity of the exemption would extend the taxing power of the municipality to the exempted district the situation would not be bettered, because it would be impossible to believe upon either theory that if the act had been presented to the legislature with the features eliminated which we have held invalid it would have been passed by the legislature, or if passed by it that the voters at the referendum would have adopted it, and we are of opinion therefore that the whole act must fall.

It follows that the decree appealed from must be affirmed.

*Decree affirmed, with costs to the appellee above and below.*