## MARYLAND THEATRICAL CORPORATION *v.* GEORGE J. BRENNAN

[No. 25, January Term, 1942.]

378

*Decided March 3, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Abram C. Joseph,* with whom was *Daniel C. Joseph* on the brief, for the appellant.

*Robert R. Bowie, Assistant Attorney General,* with whom was *William C. Walsh, Attorney General,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The bill in this case is filed by a theatrical corporation which, in connection with its theatre, operates a hall in the City of Baltimore, in which dances are conducted. The defendant is the Secretary of the Police Commissioner of the City of Baltimore. The purpose of the complaint is to prevent the enforcement of a certain public local law against the complainant. Under this law, the complainant is required by the Police Commissioner to secure a license for each and every night's dance at a charge of $5 a night, to be paid to his secretary. The contention is made that the law is unconstitutional and void. After answer and testimony, the Act was declared valid by the court below, and the bill of complaint dismissed. From that decree, the complainant appeals here.

The Act in question was first passed by the General Assembly of 1900 as Chapter 269. The title was: "An Act to provide Additional Revenue for the Special Fund of the Board of Police Commissioners of the City of Baltimore, to be derived from the granting or issuing permits to give public dances, soirees, masked balls, boxing or athletic contests, or either of them, in the City of Baltimore." It was amended by Chapter 514 of the Acts of 1902. The amendment added a clause making it a misdemeanor to violate its provisions, and providing a fine on conviction. The second amendment was made in 1906 by Chapter 267. This added a proviso that the Act was not intended to apply to regular dancing schools, which are therein defined, where no liquors are sold. Owners or managers of regular dancing academies are required by the amendment to pay an annual license fee of $5. When the Act came to be codified, it became Section 776CA of Art. 4, Code of Pub. Loc. Laws, 1930, and Section 942 of Baltimore City Charter and Pub. Loc. Laws, 1938. In those codifications the original provision

that the license or permit fee shall be paid "to the Secretary of the Board of Police Commissioners, who are authorized to demand and receive the same" is changed to, "The Secretary of the Police Commissioner, who is authorized to demand and receive the same." This was obviously done because a single Police Commissioner has now been substituted in place of the former Board of Police Commissioners. The indication is clear in the earlier Acts, from the use of the plural "are" that the board and not the secretary were the ones authorized to demand and receive the money. The codifications, of course, changed the "are" to "is," making the reference to a single Police Commissioner. This does not indicate that now the Secretary of the Police Commissioner, who is the appellee here, is the party who is authorized to demand and receive the fee. It is to be paid to him, as it always was, as a matter of administrative convenience.

The point of attack is the first clause in the Act, which reads as follows: "No public dances, soirees, mask balls, boxing or athletic contests, or other public entertainments of like kind, to or for which an admission fee shall be charged, shall be held, given or permitted in the City of Baltimore, except upon condition that a license or permit fee of not less than $5 nor more than $100 shall first be paid to the Secretary of the Police Commissioner, who is authorized to demand and receive the same for the benefit of the Special Fund." It is contended that the fixing of the license or permit fee at "not less than $5 nor more than $100" in the discretion of the Police Commissioner is a void delegation of legislative power to an administrative officer; that no standards are given him by which he must act, and by which his discretion is controlled, except the minimum and maximum amounts; that the tax is imposed upon one group of taxpayers for the special purpose in which that group has no greater special interest than others.

There is no doubt that the Legislature, or a municipality duly authorized by the Legislature, may impose

license taxes upon businesses, occupations or amusements, either for regulatory purposes, under the police power, or for revenue purposes, under the taxing power. Cases in which this court has upheld such taxes are, among others: *The Germania v. State,* 7 Md. 1 (billiard tables); *Rohr v. Gray,* 80 Md. 274, 276, 30 A. 632 (traders); *State v. Applegarth,* 81 Md. 293, 300, 31 A. 961, 28 *L. R. A.* 812 (oyster packers); *Mason v. Cumberland,* 92 Md. 451, 48 A. 136 (wheeled vehicles); *Meushaw v. State,* 109 Md. 84, 91, 71 A. 457 (commission men); *Ruggles v. State,* 120 Md. 553, 87 A. 1080 (chauffeurs); *State v. Shapiro,* 131 Md. 168, 101 A. 703, *Ann. Cas.* 1918E, 196 (junk dealers); *Gaither v. Jackson,* 147 Md. 655, 128 A. 769 (auctioneers); *Jacobs v. Baltimore,* 172 Md. 350, 191 A. 421 (coal); *Maryland Racing Commission v. Maryland Jockey Club,* 176 Md. 82, 4 A. 2d 124, 479 (race meets); *Brown v. State,* 177 Md. 321, 9 A. 2d 209 (hawkers and peddlers).

The question whether a particular Act is primarily a revenue measure or a regulatory measure is important, because different rules of construction apply. A regulatory measure may produce revenue, but in such a case the amount must be reasonable and have some definite relation to the purpose of the Act. A revenue measure, on the other hand, may also provide for regulation, but if the raising of revenue is the primary purpose, the amount of the tax is not reviewable by the courts. There is no set rule by which it can be determined in which category a particular Act primarily belongs. In general, it may be said that when it appears from the Act itself that revenue is its main objective, and the amount of the tax supports that theory, the enactment is a revenue measure. "In general, * * * where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment give the right to carry

on the business without any further conditions, it is a tax." 33 *Am. Jur., Licenses,* Paragraph 19, page 340.

The purpose of the Act before us was stated in its title when originally passed. That purpose was to provide additional revenue for the Special Fund of the Board of Police Commissioners of the City of Baltimore. The license fee, ranging from $5 to $100, is large enough in a city the size of Baltimore to produce considerable revenue, and according to the record, 44,255 public entertainment permits have been issued under it, of which forty were at the rate of $100 each, and the balance were at the rate of $5. That makes a total of $225,000 collected in a little over forty years, or an average of approximately $5,500 a year. Presumably, as the city has grown, the amount has increased, so that much more than the average is now being collected. The conclusion is inescapable that this Act is therefore primarily a revenue measure, and if it is confined to that purpose, the amount of the tax is not open to any constitutional objection here, even though it may destroy the activities taxed. *Brown v. State,* 177 Md. page 329, 9 A. 2d 209, and cases there cited.

The Act, however, is not wholly a revenue measure. There is a discretion imposed on the Police Commissioner to determine the amount of the tax within the limits proposed. The difference between the minimum and the maximum is ·considerable, and might very readily be made prohibitory. In the case of the appellant, the minimum tax on its operations would be $1,560 a year, the possible maximum would be $31,200 a year. The part of the Act, therefore, which fixes the limits of the tax, must have been intended as a regulatory section, although it is engrafted on a revenue Act. It does not fix a fee, upon the payment of which the right is established to conduct a business. It does not, it is true, in terms impose conditions upon the issuance of the permit or license other than the payment of the fee; but, by permitting the wide latitude in the amount of the fee, it does, in effect, give the Police Commissioner the

right to determine what permits should be granted and what should not. Dances, balls or public entertainments held once in a season might readily pay the maximum fee, but no dance operating every night could afford to do so. The provisions with respect to the amount of the tax or fee had to be considered as regulatory.

Looking at that portion of the Act from this standpoint, the inquiry, of course, is whether or not it is unreasonable and arbitrary. The test is, what can be done under the Act? *Hagerstown v. Baltimore & O. R. Co.,* 107 Md. 178, 68 A. 490, 126 *Am. St. Rep.* 382; *Curtis v. Mactier,* 115 Md. 386, 397, 80 A. 1066; *Grote v. Rogers,* 158 Md. 685, 149 Md. 547; *Raney v. County Commissioners,* 170 Md. 183, 196, 183 A. 548. As an illustration of what might be done, two instances of what has been done are worth noting. The appellee testified that the Walkathon Corporation, which had previously conducted an endurance contest on the Fallsway, was charged $100 a day for forty days for another contest with the purpose of discouraging the operation. In that particular case the operation was not discouraged, but on another occasion, certain promoters wanted to open what is known as a "Dime Dance Hall." This operation employs women who dance with any patron who pays 10 cents for a dance. The commissioner, in order to discourage the opening of this type of dance hall, fixed the charge at $100 a night, which was prohibitive, and the dance hall did not open. The decision of the commissioner may have been a wise one, and the results beneficial, but that question, of course, is not before us. We mention these two incidents only to show that the Act has been used to prevent certain kinds of entertainments, and can be used again in the same way.

The usual rule with respect to delegations of the police power to administrative officials is that they must be surrounded with such safeguards that the official cannot arbitrarily, at his own will and pleasure, determine whether or not certain businesses or amusements can operate. There have been a number of cases before this

court in which such grants of power have been held void because of their arbitrary nature. They are collected in the case of *County Commissioners v. Northwest Cemetery Co.*, 160 Md. 653, 154 A. 452, 453. In that case the Act was one which conferred upon the County Commissioners of Prince George's County what the courts said was "a wholly unregulated discretion to allow or to prevent the establishment or maintenance of a cemetery anywhere in Prince George's County." The Act in that case was held void. It was later distinguished from an Act passed for Montgomery County, which provided for licensing cemeteries in that county. In the latter case, the Act required the Commissioners of Montgomery County to provide certain standards to safeguard the public health and welfare and to govern uniformly the use of the delegated power. *Gordon v. County Commissioners*, 164 Md. 210, 164 A. 676. This Act was held valid. Had the Legislature laid down any rules for the issuance of permits in Baltimore City by which certain types of entertainments or amusements would pay one fee, others a higher fee, and others the maximum, there would be no question as to the validity of the regulatory clause in the Act. Indeed, it would not then be a regulatory clause, but would be an expression of the taxing power of the Legislature, and would not be subject to review by the court, even were some classes thereby prohibited. That, however, was not done, and in the Act before us, the authority to regulate by means of a fee was left to the uncontrolled discretion of the Police Commissioner. Financial regulation is of the most potent kind, and the power to fix the fee in this instance can readily be used to prohibit.

Here then we have an Act passed in the exercise of the taxing power of the Legislature for the purpose of raising revenue for a specific fund. Incorporated in it is a provision which, to be valid at all, must be so under the authority of the police power. The right to tax the various forms of amusements mentioned in the Act is undoubtedly one which is possessed by the Legislature.

They are proper subjects of taxation. But under the taxing power the amount is fixed, and upon the payment of that amount the business or amusement may operate. Here we have no fixed amount. On the contrary, the amount is left, within certain limits, to the uncontrolled discretion of an administrative official. This is not permitted under the police power. The taxing power cannot be used to validate that which is void under the police power. Could this be done, revenue Acts could be passed assessing anything taxable, and any sort of regulatory provisions could be added which would be valid under the power to tax, but void under the power to regulate. It has been generally held that where an Act is passed under the police power, the money collected under it must not be more than that necessary to carry out its provisions. Revenue Acts passed under the guise of license Acts have been frequently held void. In the same way, regulatory Acts passed under the guise of revenue Acts must be held void. The clause fixing the fees, in the Act before us, is so drawn as to come within the prohibitions against unlimited grant of power. It is an invalid exercise of the police power, and it cannot be made good merely because it is found in a revenue Act.

Counsel for the appellee urge upon us that we should imply standards or guides to be exercised by the Police Commissioner from the nature of the discretion conferred. Their theory, in effect, is that of the court below, who said that it was contemplated that the commissioner would take into account the extent to which the performance of the duties of his department might be affected by the entertainment to be licensed. Apart from the fact that we have shown that this point of view has not always been taken by the commissioner, as in the "Dime Dance Hall" matter, we find nothing in the cases cited to support this theory with respect to this Act. In the Board of Forestry case (*Chesapeake & Potomac Tel. Co. v. State Board of Forestry*, 125 Md. 666, 94 A. 322) the fees be fixed by the board were the charges

for examination and supervision. No tax was imposed, but the reasonable charges were to be defrayed and these were, of course, to be fixed by the board, which knew the conditions and what its supervision should cost. But it the case of *Foote & Co. v. Stanley*, 232 U. S. 494, 34 S. Ct. 377, 58 L. Ed. 698, a tax on oysters coming into Maryland imposed by an Act of Maryland Legislature was held to be more than was necessary for the purposes of inspection. In that case the Act was held void because the excess was a burden on interstate commerce, but the Supreme Court said that this court could have determined that the charge under the inspection law was excessive, and its refusal to do so under the proposed authority of a Supreme Court case was not justified. The case in this court which was thus overruled was *Foote & Co. v. Stanley*, 117 Md. 335, 82 A. 380. The Act before us does not indicate in any way that additional expense is to be put on the Police Department by the holding of these various entertainment. They are usual incidents in the life of a large city, and the Police Department is ordinarily prepared to take care of them. The relation between the issuance of the permits and the excess duties (if any) is so slight that it does not justify any theory that the license fee could or would be proportioned to the extra burden laid upon the police. In the Forestry case and in other similar cases, the inspection tax was for inspections to be made for particular work. No expense would be entailed if the work were not done. The situations are not comparable.

It is sometimes possible for a court to strike down portions of an Act and to uphold the remainder. It is never done, however, where the part of the Act remaining after the invalid portions are removed, clearly presents a situation which could not have been intended by the Legislature. In the Act before us the purpose was to provide revenue for the special police fund. If we take out the clause providing for the fee, the whole purpose of the Act is gone. If we leave in the minimum fee, we destroy the purpose which the Legislature evi-

dently had of providing for the regulation of the various amusements or occupations mentioned, and leave the Act saying something which the Legislature did not intend. The rule is well expressed in the case of *Schneider v. Duer,* 170 Md. 326, 184 A. 914, 920, where this court said: "Where the parts of the Act held to be unreasonable within the constitutional meaning are so extensively controlling that those parts which might be held valid become so inoperative and inexplicable as to deprive the Act of its purposes and force, then it must be assumed that the Legislature could not have intended to pass an Act that would be useless and unworkable." In our view of this case the minimum and maximum fee provisions of this Act are so interwoven with the other provisions, and the whole Act is so based upon fees expected to be realized from these provisions, that the whole must stand or fall with the part.

It is urged upon us that this Act has been in operation for forty years without complaint, and that the constant exercise of this power by the Police Commissioners and later by the single commissioner provides a contemporaneous construction of it which we should respect. It is true that long-continued custom and acquiescence by officials charged with the administration of government and by the Legislature has been used in aid of inquiry into the true meaning of certain constitutional provisions. *Humphreys v. Walls,* 169 Md. 292, 181 A. 735; *Norris v. Baltimore,* 172 Md. 667, 192 A. 531. Nevertheless, an Act passed in 1865 was held unconstitutional by this court forty-three years later, although during all that period one of the counties of the State had paid $600 each year under its provisions. This court said in that case: "The long acquiescence by the county in paying the amount for so many years cannot estop the present county commissioners from raising the question, and thereby make an unconstitutional law in effect constitutional." *Somerset County v. Pocomoke Bridge Co.,* 109 Md. 1, 71 A. 462, 465, 16 *Ann. Cas.* 874. See also *Arnsperger v. Crawford,* 101 Md. 247, 258, 61

A. 413, 70 *L. R. A.* 497. The mere fact that no one has thought it worth the trouble or expense to contest this Act in the courts until now does not detract from the right of the appellant to do so. It is never too late to re-. establish constitutional rights, even though their observance has been waived or not raised from motives of economy or for other reasons. In cases of doubt, where one construction has been adopted and acquiesced in for a great many years, there may be considerations for accepting that construction which are persuasive. In the case, however, of a right which is infringed by an unconstitutional statute, it is never too late for the courts to consider the question.

It has also been urged upon us that the appellant is in no position to raise the question of the constitutionality of the clause fixing a minimum and a maximum fee, because he is only required to pay the minimum, and, therefore, he is not interested in that part of the Act which allows more to be charged. This is based upon the well considered rule that the power of the court to pass on the constitutionality of a statute arises from the case before it, and if this is not involved in the case, the court lacks the power. The secondary rule is that a litigant cannot urge the invalidity of a statute unless his interests are adversely affected thereby. There are a number of cases in this State which uphold both of these points of view, and they may be taken to be well established and beyond contravention. *State v. Insley,* 64 Md. 28, 20 A. 1031; *State v. Case,* 132 Md. 269, 103 A. 569; *Brown v. State,* 177 Md. 321, 9 A. 2d 209. Upon reflection, however, it will be seen that this argument as applied to the case before us is specious, because it depends upon the theory that only that portion of the fee which is in excess of the minimum is before us for construction. In reality the whole of the fee-fixing clause must be considered together, because it is not separable. If that clause as a whole is invalid, then the appellant is being made to pay a fee which is not authorized by statute.

Many other interesting questions involving the rights of the appellant and the validity of other Acts, the constitutional guarantees, and the essentials of statutory and constitutional construction were discussed by counsel for both sides in their very able briefs and arguments, which have been of considerable assistance to the court. It is, however, unnecessary to consider other matters, in view of the conclusions we have reached. We find that the Act as a whole is void, and that the appellant is entitled to a decree so declaring. There seems to be no occasion for the issuance of an injunction against the appellee, who is the Secretary of the Police Commissioner, and who is not charged with the enforcement of the Act, except that the money was to be paid to him. It is to be presumed that the Police Commissioner will take notice of the declaratory decree and act accordingly. In view of these circumstances and the fact that it was a long continued practice which was followed by the present officials, and was not one in any way initiated by them, we have concluded that the costs of this appeal should be paid by the appellant.

*Decree reversed, cause remanded for further proceedings, in accordance with this opinion. Appellant to pay the costs.*