GONZALES A. *v.* GHINGER, TREASURER·

[No. 8, September Term, 1958.]

*Decided November 13, 1958.*

The cause was argued before Brune, C. J., and Henderson, Hammond, Prescott and Horney, JJ.

*Alexander R. Martick* and *Leonard J. Kerpelman,* for appellant.

*Jerome A. Dashner, Assistant City Solicitor,* with whom were *Thomas N. Biddison, City Solicitor,* and *Hugo A. Ricciuti, Deputy City Solicitor,* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

This appeal is from an order of an equity court sustaining, without leave to amend, a demurrer to a petition for mandatory injunction directing the appellees to issue to the appellant a license to conduct a public display and entertainment in the City of Baltimore, in the form of a bullfight. Attached to the petition are exhibits consisting of copies of correspondence between the appellant and City officials. From these it appears that the appellant on July 3, 1957, wrote to the Superintendent of the Bureau of Receipts, asking information regarding bullfighting in Baltimore City. The letter was written from Cartagena, Colombia, South America. It asked that the addressee "let us know everything we have to do in order to get a license to stage bullfights in the City of Baltimore." It stated that horses would not be used in the fight, and that the bull would not be injured or killed. Banderillas would be placed in a leather jacket worn by the bull, about 7 or 8 inches thick. The bull would "have a minute's rest for every five he fights, and will not fight more than twenty minutes. * * * We have in mind presenting three matadors with their cuadrillas. * * * One of the matadors will be a girl, the other one a man fighting seriously, and the third one * * * will fight with a lot of mimic and showing." This letter was referred to the City Treasurer, who replied that he had conferred with the Mayor, and "while we understand that this would be a bloodless contest, we both feel that because bullfighting has never, to our knowledge, been held in Baltimore City, it is, therefore, probably not understood by our citizens, and we must regretfully decline your application." In reply, the appellant denied the validity and sufficiency of the reasons assigned for the refusal, and asked for reconsideration. The City Treasurer thereupon wrote that under the law he had a right to decline any application for a license if his action were approved by the Mayor, and that the "declination still stands."

The petition for mandatory injunction alleged that the appellant had made application in proper form, that the proposed entertainment "would not only be of interest to those who might choose to see it, but would be in furtherance of international amity and understanding, and would be educational as well." He alleged that the rejection of the application by the appellees "was not within authority lawfully granted to them by * * * Article 19, Sec. 19, of the Baltimore City Code (1950), or any other statute, ordinance or law, but was unreasonable, arbitrary and unlawful."

Section 9 of Article 19 of the City Code (1950) provides that no person shall exhibit any entertainment or show, or public exhibition for gain, without a license for that purpose from the Mayor. Section 19 provides: "Upon the approval of the Mayor, the Treasurer shall have full power and authority to refuse to grant licenses under the provisions of this Article * * *." Implicit in these sections is the authority to grant licenses under the general power conferred upon the City by Section 6 (34) of the Charter (1949 Ed.) "To license, regulate and restrain theatrical and other public amusements."

I

The appellant seeks to attack the validity of said Section 19 in this Court for the first time. The question not having been raised below, we are not at liberty to determine the same at this time, Maryland Rule 885; hence, for the purposes of this appeal, we must consider the section as a valid enactment of law.

II

The appellant frankly admits and there is no question but that the State can exercise the police power to preserve and protect the public health, welfare, safety and morals. Nor can it be doubted that regulation or restraint of public amusements is squarely within the ambit of the police power. *Maryland Theatrical Corp. v. Brennan,* 180 Md. 377, 380, 381, 24 A. 2d 911; *State v. Loden,* 117 Md. 373, 83 A. 564; 7 McQuillin, *Municipal Corporations,* Sec. 24.198; 52 Am. Jur. *Theaters, Shows, Exhibitions, Etc.,* 13, 14, 22.

While admitting the above, the appellant sets forth, as his real contention, that the exercise of the police power for regulating the licensing of amusements must be done in a reasonable way, and not in an arbitrary or capricious manner in a legal sense. In this contention, he is well buttressed by the law of this State and elsewhere. *Maryland Theatrical Corp. v. Brennan, supra,* and the cases therein cited; 7 McQuillin, *op. cit.,* Sec. 24.198; 9 McQuillin, *op. cit.,* Sec. 26.151; 86 C. J. S. *Theaters and Shows,* Secs. 3, 23; 52 Am. Jur., *Theaters, Shows, Exhibitions, Etc.,* Sec. 22; 53 C. J. S. *Licenses,* Sec. 38. In *Hecht v. Crook,* 184 Md. 271, at page 280, 40 A. 2d 673, this Court said: "In the last analysis, the question as to what decisions of an administrative agency are reviewable must turn upon the statute creating it, and upon the type and degree of discretion conferred upon the particular agency. Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion, where discretion is clearly conferred."

We shall now apply the above principles to the facts at hand. We are unable to say as a matter of law that a public exhibition displaying a bullfight as described in the petition would be a nuisance *per se.* It is a matter of general knowledge that many sporting events and public entertainments, such as football, ice hockey, boxing, wrestling, circuses in which aerial artists perform dangerously and in which spectators and others ride Brahman bulls, and rodeos are licensed. It may well be that the Mayor and Treasurer have some perfectly sound reason or reasons for the denial of the license herein requested; but the only grounds shown by the pleadings are that bullfighting is "probably not understood by our citizens" and the Mayor and Treasurer have a right, without assigning any reason, to decline the application. We do not think the refusal of the application upon these grounds, alone, relieve the action of the Mayor and Treasurer in denying the license from being arbitrary and unreasonable in a legal

sense; consequently, we hold that the demurrer should have been overruled and the defendants required to answer the petition.

> *Decree reversed, and cause remanded for further proceedings, the appellees to pay the costs.*