THOMAS D. RUGGLES *vs.* STATE OF MARYLAND.

*Repeal of statutes: implication. Police justices of Baltimore City: jurisdiction; licenses of automobiles, etc.; Ch. 133 and Ch. 777 of the Act of 1912; inconsistent. Penal statutes: special exceptions; indictments need not negative. State licenses: revocable. Police power: State can not divest itself of——. Contracts: protection of U. S. Constitution; refers to property rights only. Motor vehicle license law: Ch. 133, Acts 1912; special license exacted of professional chauffeurs; constitutional; a taxing of business; not unfair discrimination; penalty; imprisonment for failure to pay; not imprisonment for "debt" in constitutional sense. Title of statutes.: sufficient description.*

On a question of repeal of statutes by implication, the test is one of repugnancy, whether the two laws can stand together and be executed at the same time.                         p. 559

Chapter 133 of the Act of 1912, authorizing police justices of Baltimore City to try and determine violations of the law requiring licenses for the operators of motor vehicles, is inconsistent with Chapter 777 of the Acts of 1912, which was approved later- -that the police justices of Baltimore City shall not have power to determine any violation of the Public General Laws relating to licenses except as to hawkers or peddlers, but shall cause all such offenders to be committed or held for bail for trial in the Criminal Court—and is repealed by it.                                    pp. 558-559

Where, after general words of prohibition, an exception is created in a subsequent clause or section, such exception must be interposed by the accused as a matter of defense, and it is not necessary in such a case that the indictment should negative the exceptions by express averment.              p. 559

Mere licenses issued by the State are always revocable, and the police power of the State can not be bargained away.
                                                    p. 560

The contracts which the Constitution of the United States protects relate to property, and not to governmental rights.
                                                    p. 560

The provision in Chapter 207 of the Act of 1910, that the license of operators of motor vehicles shall be $2.00 and shall be good until suspended or revoked, etc., was merely intended to define the privilege accorded the licensee, and does not have the effect of binding the State by a contract which can not be constitutionally rescinded. p. 561

Chapter 133 of the Act of 1912, regulating license fees for professional chauffeurs and other operators of motor vehicles was passed for the purpose of regulating the use of rapid transit upon the public highways, and is directed to the protection of public safety and its enactment is within the police power of the State. · p. 561

In the exercise of this power, the Legislature may classify the persons to whom the prescribed regulations shall apply, provided that the classification is not unreasonable and arbitrary.
p. 567

The propriety of such provisions will be presumed unless it is apparent that they do not rest upon any reasonable ground.
p. 561

Exemptions in the law as to motor vehicles used for ambulances, or for municipal purposes, and under public authority and control, is consistent with valid legislation for the purpose of regulating the use of such means of transportation for private convenience or profit. p. 562

Exemption as to traction engines employed in hauling agricultural machinery is proper, in view of the essential design of the Act to regulate motor vehicles capable of being operated at a high rate of speed. p. 562

The requirement that professional chauffeurs shall obtain an annual license at a cost of $5.00, while other operators pay a fee of only $2.00 for a license which does not require renewal, is a proper regulation from the point of view of supervision in the case of those who operate motor vehicles as a regular business. pp. 562, 563

Such a provision is valid, as an exercise of the power of the State to impose license charges upon occupations within its limit. p. 563

These special license fees required of those operating motor
vehicles for salary, wages or profit is not a deprivation of
property without due process of law, within the meaning of
the Fourtenth Amendment to the Constitution or of the
Twenty-third Article of the Declaration of Rights of Mary-
land.                                                    p. 562

License fees charges are a tax on business or occupation, and
is not in violation of the first clause of the Fifteenth Article
of the Bill of Rights as a direct tax on property.       p. 563

Chapter 133 of the Act of 1912, in its title, refers to section
138 of Article 56 of the Code, under the title "Licenses," sub-
title "Motor Vehicles," and is a sufficient description of the
provisions in the body of the Act.                   pp. 563-564

The penalty provided by Chapter 133 of the Act of 1912, pro-
viding as a penalty for violations of the Act imprisonment in
jail for a limited period in default of the payment of the
fine authorized by the Act to be imposed, is not an imprison-
ment for debt, within the intention of section 38 of Article 3
of the State Constitution.                               p. 564

The term "debt" as there employed in the Constitution means
an obligation arising otherwise than from the sentence of a
Court for breach of the public peace or commission of a
crime.                                                   p. 565

The provision in Chapter 133 of the Acts of 1912, in provid-
ing for a special annual license for professional chauffeurs,
is not repugnant to section 29 of Article 3 of the Constitu-
tion because not sufficiently described in the title of the Act.

This provision forms a part of section 138 of Article 56 of the
Code, title "License," sub-title "Motor Vehicles," and the
title of the Act of 1910 describes the subject of its enact-
ments by reference to that article and section of the Code,
which is a sufficient description of the contents of the Act to
satisfy the constitutional requirement.                  p. 564

*Decided April 11th, 1913.*

Appeal from the Criminal Court of Baltimore City (Gor-
ter, J.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe,
Burke, Thomas, Pattison, Urner, Stockbridge and
Constable, JJ.

*George J. Kessler* (with whom was *Frank F. Luthardt* on
the brief), for the appellant.

*Edgar Allan Poe, the Attorney-General,* and *Horton S.
Smith* (with whom was *Wm. F. Broening* on the brief), for
the appellee.

Urner, J., delievered the opinion of the Court.

The Motor Vehicle Law of Maryland includes among its
provisions the following: "No person shall operate a motor
vehicle upon any highway of this State until he shall have
first obtained an operator's license for the purpose, but noth-
ing herein contained shall be taken to prevent the operation
of a motor vehicle by an unlicensed person, other than a
person whose application has been refused or whose license
had been suspended or revoked, if accompanied by a licensed
operator" * * * (Sec. 137, Chapter 207, Acts of 1910;
p. 174, sec. 139, Art. 56, Annotated Code of 1912.) "The
following fees shall be paid the Commissioner of Motor
Vehicles for licenses to operate motor vehicles in this State:
Two dollars to operate vehicles other than motor cycles and
one dollar to operate motor cycles; provided, however, that
any^ne who, before this sub-title becomes effective, has paid
for and obtained a license to operate motor vehicles in this
State, or has obtained an owner's certificate or registration,
can, by making the application required in section 137 of
this sub-title and by surrendering such certificate of license
to the Commissioner of Motor Vehicles, receive therefor,
without cost, an operator's license under this sub-title; sub-
ject, however, to the other provisions of said section 137.

Such license shall be good until suspended or revoked as hereinafter provided, and shall not be required to be renewed annually; provided, however, that the aforegoing provisions of this section shall not apply to professional chauffeurs or operators, but the latter shall be required annually to obtain an operator's license, as provided in section 137, and shall pay annually therefor the sum of $5.00. Professional chauffeurs or operators, as here used, shall mean any person operating or running a motor vehicle for another for salary or wages, and also any person operating or running a motor vehicle, whether his own or another's for hire or profit." (Section 138, Chapter 207, Acts of 1910; Section 140, Article 56, Annotated Code; Chapter 133, Acts 1912.)

The appellant was tried under an indictment which charged, in separate counts: first, that he unlawfully operated a motor vehicle upon the highways of the State without having first obtained a license from the Commissioner of Motor Vehicles; and secondly, that he unlawfully operated a motor vehicle upon the highways of the State for another, to wit, for the Brown Taxi Company, a corporation, for salary, wages, hire and profit, without having first obtained a license from the Commissioner for that purpose. Each of the counts averred also that the defendant was not "then and there accompanied by a person duly licensed to operate motor vehicles upon the highways of the State."

By motion to quash the first count and by demurrer to the second count the defendant questioned the jurisdiction of the Court, the sufficiency of the indictment and the constitutionality of the statute upon which the prosecution was based.

The ground of the motion was that the Criminal Court of Baltimore City could take cognizance of such a case only on appeal from the action of a police justice of the city, and since the defendant had not been tried for the alleged offense before such an officer, the Court was without jurisdiction. There was a provision in Chapter 207 of the Acts of 1910 to the effect that any person arrested for the violation of the

motor vehicle law in Baltimore should be tried before the
nearest police justice, to whom jurisdiction was given by the
Act to hear and determine the case and to impose the pre-
scribed penalty, subject to the right of the defendant on con-
viction to appeal to the Criminal Court. This provision was
construed and upheld in *Crichton* v. *State,* 115 Md. 423.
By Chapter 133 of the Acts of 1912, approved April 4th of
that year, it was enacted that any justice of the peace having
criminal jurisdiction should have full authority to try, and
determine violations of the Act. It was enacted, however,
by Chapter 777 of the Acts of 1912, approved seven days
later than Chapter 133, that the police justices of Baltimore
City "shall not have power to try and determine any viola-
tion of the public general laws of this State relating to
licenses (except violations of laws relating to hawkers and
peddlers) * * * but shall cause all such offenders * * * to
be committed or held to bail for trial in the Criminal Court
of Baltimore." This statute, by amendments to the Balti-
more City Charter, revised in part the criminal jurisdiction
and procedure of the police justice of the city. The Act
became effective before the commission of the offense charged
in the indictment, and as it is alleged to consist of a viola-
tion of the law requiring a license for the purpose described,
it would seem to be expressly excluded from the classes of
cases which the police justices of Baltimore City are author-
ized to *try* and *determine.*

The theory of the defendant is that the statutes regulating
the use of motor vehicles embody a special system of law on
that subject, and that Chapter 777 of the Acts of 1912 is an
enactment of a more general nature. It is then sought to
apply the rule that a later general law does not repeal a prior
and particular Act unless direct reference is made to it for
that purpose, or unless the terms of the two statutes are
irreconcilable. *Garrett* v. *Janes,* 65 Md. 260; *State* v. *N. C.
R. R. Co.,* 44 Md. 167; *Anne Arundel County* v. *United Rail-
ways Co.,* 109 Md. 390. If it be assumed that the legisla-

tion defining the jurisdiction of the police justices of Baltimore City is more general in its character than that relating to the use of motor vehicles throughout the State, there is nevertheless such an inconsistency between the provisions under consideration as to affect a repeal by implication. The test of repugnancy in such cases is the practical inquiry whether the two laws can "stand together and be executed at the same time." *State* v. *Gambrill,* 115 Md. 511; *State* v. *Yewell,* 63 Md. 121; *School Commissioners* v. *Henkel,* 117 Md. 105. It is evident here that the earlier statute, authorizing the police justice of Baltimore City to try and determine cases in which persons are accused of violating the law requiring licenses to be obtained for the operation of motor vehicles, can not be applied consistently with the later Act which expressly forbids the exercise of such jurisdiction. We accordingly hold that the motion to quash was properly overruled.

The indictment was said to be defective in not alleging that the automobile operated by the defendant was not included in certain classes of motor vehicles which are specifically exempted by the terms of the statute. The requirement for the license is in section 138, while the exception referred to is in section 140 т, which provides an exemption as to all motor vehicles used by any municipal police or fire department or salvage corps, and all ambulances, road rollers, street sprinklers, street sweepers or cleaners, and all traction engines used for the hauling of agricultural machinery. The rule is that "where after general words of prohibition, an exception is created in a subsequent clause or section, it must be interposed by the accused as a matter of defense, and it is not necessary in such case that the indictment should negative the exception by express averment." *Weber* v. *State,* 116 Md. 410; *Parker* v. *State,* 99 Md. 201; *Kiefer* v. *State,* 87 Md. 567; *Stearns* v. *State,* 81 Md. 341. This well settled principle disposed of the objection to which we have referred.

There are various constitutional questions raised on the demurrer, and they will be considered in the order in which they are presented.

The first of these objections is based upon a theory which involves a consideration of section 138 of the Motor Vehicle Law as it existed prior to its amendment by Chapter 133 of the Acts of 1912. This section in its present form has already been quoted. As incorporated in Chapter 207 of the Acts of 1910 it provided that the license fee of $2.00 provided for operators of motor vehicles should be good until suspended or revoked for causes specified in a later section, and should not be subject to annual renewal. The provision that professional chauffeurs should annually obtain an operator's license at a cost of $5.00 was added to the section by the Act of 1912. It is contended that the licenses issued under the Act of 1910 were perpetual and irrevocable, except for certain designated causes of forfeiture, and constituted contracts between the holders and the State which the Act of 1912 impairs as to professional operators in violation of section 10 of Article 1 of the Constitution of the United States.

It was held in *Doyle* v. *Continental Insurance Co.,* 94 U. S. 535, that "a mere license by a State is always revocable," and in *Stone* v. *Mississippi,* 101 U. S. 814, that "the contracts which the Constitution protects are those that relate to property rights, not governmental," and that "the Legislature can not bargain away the police power of a State." This Court has twice declared that the Legislature has "the power to prohibit the sale of liquor in any part of the State notwithstanding a party to be affected by the law may have procured a license, under the general license laws of the State, which has not yet expired. Such a license is in no sense a contract made by the State with the party holding the license. It is a mere permit, subject to be modified or annulled at the pleasure of the Legislature, who have the power to change or repeal the law under which the license was granted." *Fell* v. *State,* 42 Md. 89; *Clark* v. *Tower,*

104 Md. 181. The principles of these decisions is clearly applicable to the present case. There is no ground upon which the license here in question can be exempted from the power of revocation reserved to the Legislature. The provision in the statute that the license "shall be good until suspended or revoked" for prescribed causes and "shall not be required to be renewed annually," was merely intended to define the privilege accorded the licensee, and does not have the effect, suggested by the defendant, of binding the State by a contract which can not be constitutionally rescinded.

The validity of the statute is next assailed on the ground that it unduly discriminates against those who operate motor vehicles for salary, wages, hire or profit, thereby denying to them the equal protection of the law contrary to the Fourteenth Amendment of the Federal Constitution. The Act is said to make an arbitrary distinction in favor of the operators of motor vehicles and traction engines of the classes exempted by section 140T, and to place a special and unreasonable burden upon professional chauffeurs.

The primary purpose of this general system of legislation is to insure the competency of the operators of motor vehicles and to regulate the use of this means of rapid transit on the public highways. The law is manifestly directed to the promotion of the public safety, and its enactment, therefore, was within the police power of the State. There can be no doubt that the Legislature, in the exercise of this power, may classify the persons to whom the prescribed regulations shall apply, provided the classifications are not unreasonable or arbitrary. *Mt. Vernon Co.* v. *Frankfort Co.,* 111 Md. 569; *State* v. *Broadbelt,* 89 Md. 565; *Holden* v. *Hardy,* 169 U. S. 395; *Barbier* v. *Connelly,* 113 U. S. 27; *Bowman* v. *Lewis,* 101 U. S. 22; *L'Hote* v. *New Orleans,* 177 U. S. 587. The propriety of such provisions, however, will be presumed unless it is apparent that they do not rest upon reasonable grounds. *Mt. Vernon Co.* v. *Frankfort Co.,* *Holden* v. *Hardy, supra.* It is clear that the discriminations here complained of are not open to this objection. The

exemption of motor vehicles used for municipal purposes, under public authority and control, was obviously and justly consistent with a valid legislative purpose to regulate the use of such means of transportation for private convenience or profit; and the exception as to traction engines employed in hauling agricultural machinery was plainly proper in view of the essential design of the Act to regulate motor vehicles capable of being operated at a high rate of speed. The requirement that professional chauffeurs shall obtain a license annually at a cost of $5.00, while other operators pay a fee of only $2.00 for a license which does not need annual renewal, possibly had regard to a special necessity for supervision in the case of those who operate motor vehicles as a regular business. But in any event the validity of this provision can be readily sustained as an exercise of the well recognized power of the State to impose license taxes upon occupations within its limits. *State* v. *Applegarth,* 81 Md. 300; *Rohr* v. *Gray,* 80 Md. 276; *Mason* v. *Cumberland,* 92 Md. 461; *Meushaw* v. *State,* 109 Md. 91; *License Tax Cases,* 5 Wallace, 462; *Wellon* v. *Missouri,* 91 U. S. 278; 25 *Cyc.* 599. This consideration disposes also of the additional objection urged that the exaction of a special license fee in the case of those who operate motor vehicles for salary wages, hire or profit deprives the defendant of his property without due process of law contrary to the Fourteenth Amendment of the Constitution of the United States, and of the twenty-third Article of the Declaration of Rights of Maryland.

The further contention that the annual license fee of $5.00 required of professional chauffeurs is an arbitrary and unusual tax and as such is obnoxious to the fifteenth Article of the Declaration of Rights is distinctly answered by the rulings of this Court in *State* v. *Applegarth* and *Rohr* v. *Gray, supra.* In each of these cases an occupational license fee was being considered and in each instance it was held that the imposition of such a charge is not a violation of the constitutional provision here invoked. The *Rohr case* was

concerned with an Act requiring a separate license to be obtained by traders for each place of business maintained, and it was objected that this provision offended against the declaration in the Bill of Rights "that every person in the State or person holding property therein ought to contribute his proportion of public taxes for the support of the Government according to his actual worth in real or personal property." In disposing of this objection the Court, in an opinion by JUDGE BRISCOE, said that while all taxes levied upon property are required to be uniform, "the framers of the Constitution also declared that in addition to taxes on property other taxes might be levied 'for the good government and benefit of the community.' A license tax as laid or imposed here is not a direct tax on property within the meaning of the first clause of the 15th Article of the Bill of Rights, but is a tax on the business or occupation of the trader or licensee, under the last clause of that Article." The power of a State to impose a tax by way of license upon pursuits and occupations within its limits was said to have never been seriously questioned.

In the opinion by JUDGE BOYD in the *Applegarth case* it was said: "The privilege of carrying on the business of packing and canning oysters is made, by this law, to depend upon the taking out of a license, and we do not think the provisions of the State Constitution looking to equality and uniformity in taxation are thereby violated * * * The right to require the payment of license fees for the privilege of carrying on business of different kinds has been recognized for many years in this State, and the license fees required to be paid have been fixed, in the discretion of the Legislature, according to circumstances and the character of the business."

The point is made that Chapter 133 of the Acts of 1912, in providing for a special and annual license for professional chauffeurs, and in thus creating a new class of operators, deals with a subject which is not sufficiently described in

its title, and is, therefore, repugnant to section 29 of Article 3 of the State Constitution.

This provision forms a part of section 138 of Article 56 of the Code of Public General Laws, title 'Licenses,' sub-title 'Motor Vehicles,' and the title of the Act of 1912 describes the subject of its enactments by reference to the Article and sections of the Code in which they are incorporated. This has been frequently held to be a sufficient description, and there can be no doubt that the provision in controversy· is *germane* to the general subject to which the title refers. *State* v. *Loden,* 117 Md. 373; *Bond* v. *Baltimore,* 116 Md. 683; *Curtis* v. *Mactier,* 115 Md. 386; *Worcester County* v. *School Commissioners,* 113 Md. 309; *Kingan Packing Asso.* v. *Lloyd,* 110 Md. 619; *Anne Arundel County* v. *United Railway Co.,* 109 Md. 377; *Baltimore* v. *Reitz,* 50 Md. 574; *Drennen* v. *Banks,* 80 Md. 316.

The final theory submitted on the demurrer is that the Act authorizes imprisonment for debt contrary to section 38 of Article 3 of the Maryland Constitution. The penalty provided by the statute for operating a motor vehicle without a license provides imprisonment in jail for a limited period upon default in the payment of the fine authorized to be imposed. It is suggested that the license fee exacted by the statute, if held to be a mere occupational tax, can be collected only by civil proceedings, and that the enforcement of its payment by the imposition of the ultimate penalty prescribed would amount substantially to imprisonment for debt. The objection thus raised is conclusively settled by previous decisions of this Court. The term "debt" as employed in the Constitution in this connection has been defined to mean "an obligation arising otherwise than from the sentence of a Court for breach of the public peace or commission of a crime." *State* v. *Mace,* 5 Md. 350. It was said in that case: "The evident intention of the Constitution was to relieve those who could not pay their debts, and not to shield from punishment persons who had violated the public law."

In *State* v. *Nicholson,* 67 Md. 1, a statute providing for the punishment of defaulting tax collectors by confinement in the penitentiary, subject to discharge from prosecution by payment of the amount due either before or after conviction, was held to be valid as against the objection now under consideration. There was said to be a "broad distinction between imprisonment for debt within the meaning of the Constitution and imprisonment for a breach of duty on the part of a public officer, although such breach of duty may be the neglect or refusal on his part to pay money received by him for the use of the State." The punishment contemplated by the present Act is not inflicted for a failure to pay the designated fee, but for the operation of a motor · vehicle without a license contrary to the prohibition of the law.

The defendant's demurrer was overruled by the Court below, and special pleas were then filed alleging in effect that at the time of the commission of the Act charged in the indictment the defendant held a license issued under the provisions of Chapter 207 of the Acts of 1910 in exchange for a chauffer's license previously obtained by him under section 131 of Chapter 449 of the Acts of 1906, which latter statute the Act of 1910 amended. This averment was predicated upon the theory, already considered, that the license issued under the Act of 1910 constituted a binding contract which was not validly rescinded as to the defendant by the Act of 1912. A demurrer to the special pleas having been sustained a general plea of not guilty was entered. The case was then tried upon an agreed statement as to the facts and resulted in ·the judgment of conviction which is the basis of this appeal. It appears, therefore, that the subsequent proceedings have raised no questions in addition to those decided upon the motion and demurrer directed against the indictment. As our conclusions are in accord with those reached by the Court below the judgment will be affirmed.

*Judgment affirmed, with costs.*