Phillip **MORRIS**, Diego Cordova Cesario (also known as Diego Cordova), Joseph J. Dingle, Calvin Scott Coles, Charles Thomas, Dale K. Quimby

v.

Hiram **SCHOONFIELD**, Warden, Baltimore City Jail, and State of Maryland.

Civ. No. 19703.

United States District Court, D. Maryland.

Jan. 29, 1969.

Winter, Circuit Judge, dissented in part.

Robert G. Fisher, Elsbeth Levy Bothe, Stuart H. Rome and William H. Zinman, Baltimore, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, Alfred J. O'Ferrall, III, Asst. Atty. Gen. for the State of Maryland, George L. Russell, Jr., City Sol. of Baltimore City and Roger B. Duncan, Asst. City Sol., Baltimore, Md., for Baltimore City Jail.

Before WINTER, Circuit Judge, and THOMSEN and HARVEY, District Judges.

THOMSEN, District Judge.

This is the second attack which plaintiffs' counsel have mounted against Article 38, Sections 1 and 4 of the Maryland Code, which provide for commitment to jail for nonpayment of fines and costs.

Article 38 deals with Fines and Forfeitures. Sections 1 and 4 provide in pertinent part:

"§ 1. Mode of recovering; * * *

"When any fine or penalty is imposed by any act of Assembly of this State or by any ordinance of any incorporated city or town in this State enacted in pursuance of sufficient authority, for the doing of any act forbidden to be done by such act of Assembly or ordinance, or for omitting to do any act required to be done by such act of Assembly or ordinance, the doing of such act or the omission to do such act shall be deemed to be a criminal offense; * * * If any person shall be adjudged guilty of any such offense by any court having jurisdiction in the premises, he shall be sentenced to the fine or penalty prescribed by such act of Assembly or ordinance and to the costs of his prosecution; and in default of payment thereof he shall be committed to jail until thence discharged by due course of law. * * *"

"§ 4. Confinement for nonpayment.

"Any person who shall or may hereafter be committed to jail on any charge, including contempt of court, by the judgment of any court or by any justice of the peace of this State, for nonpayment of any fine and costs, shall be confined one day for every two dollars of fine and costs but in no event shall be confined more than thirty days for fine and costs amounting to one hundred dollars, nor more than sixty days for fine and costs exceeding one hundred dollars but not more than five hundred dollars nor more than ninety days for fine and costs exceeding five hundred dollars. All periods of confinement imposed under the provisions of this section because of nonpayment of two or more fines and costs shall run concurrently unless it shall be specified by the court

or justice of the peace that said periods shall run consecutively."

Section 4 was amended, effective July 1, 1968, to read as set out above. Previously the ratio of days in jail to dollars of unpaid fine and costs had been one day of confinement for each dollar of fine and costs.

The previous action was brought by several persons who had been convicted of violating the curfew imposed during the riots in Baltimore in April 1968, on behalf of themselves and of others similarly situated. They alleged, and the State admitted, that they were indigent and therefore unable to pay their fines. A three-judge court, composed of the same judges who compose the court in this case, held that commitment to jail for nonpayment of fines did not violate plaintiffs' constitutional rights. Kelly v. Schoonfield, 285 F.Supp. 732, decided May 28, 1968. The Court found, however, based upon an agreement of counsel "that in Baltimore City and the adjacent counties, when a court imposes a jail sentence, whether for a given number of days or a given number of months, it is the practice not to include costs in the commitment; hence, in such cases, no time is served for nonpayment of costs. When a fine is imposed, the costs are usually specified in the commitment and are included in computing the time to be served in default of payment". 285 F.Supp. at 737. The Court found no justification for that distinction, which appeared to be an invidious discrimination in violation of the equal protection clause, and concluded that under the circumstances of that case the State could not constitutionally include costs in computing the time to be served under Article 38, Section 4.

The present action was filed on July 12, 1968, by six persons who had been convicted of various offenses by the Municipal Court of Baltimore City, and were confined in the Baltimore City Jail for nonpayment of fines and costs. Three of the plaintiffs have now completed their sentences. The other three have been released on bail by a judge of the Supreme Bench of Baltimore City pending the decision of this case.

Plaintiffs are suing on their own behalf and on behalf of all other indigent persons detained by the Warden of the Baltimore City Jail under Article 38, Sections 1 and 4, for nonpayment of fines and/or costs. They claim that those sections are unconstitutional as applied to indigents because they violate the "excessive fines" and "cruel and unusual punishment" provisions of the Eighth Amendment, the "due process" and "equal protection" clauses of the Fourteenth Amendment, and the "involuntary servitude" provision of the Thirteenth Amendment to the Constitution of the United States.

Defendants [1] have filed a motion to dismiss on various grounds. The parties have entered into a stipulation of certain facts, and submitted the case after argument. The Court finds, however, that although the stipulated facts are sufficient to enable the Court to decide the issues raised with respect to costs, they are not sufficient to enable the Court to decide at this time the other questions raised.

## I.

No Maryland decision discussing costs in criminal cases has been cited or found. The law throughout the country is summarized in 20 Am.Jur.2d (Costs §§ 100, 110), pp. 79, 80, 84.

"§ 100. Generally; liability of defendant.

"Costs in criminal prosecutions are unknown at common law; their recovery in any criminal case depends wholly upon statutory provisions therefor. In the absence of such statutory authorization, a court has no power to award costs against a defendant on conviction. Under some statutes the

---

1. The Warden of the Baltimore City Jail and the State of Maryland, which intervened in the previous case because of its interest, and has not objected to being made a party defendant in this case.

defendant may be required to pay the costs of prosecution on conviction. The provision may be limited to cases in which fines are assessed, but frequently extends to all criminal cases. Constitutional objections to such statutory provisions, generally directed at their enforcement by way of imprisonment, have been overruled. But provisions imposing costs on a convicted defendant for items that do not constitute an expense incident to trial and prosecution are unconstitutional."

> "§ 110. Enforcement of judgment for costs—against defendant.

"Under a statute so providing, a judgment for costs against a defendant may be enforced by execution, as in civil cases. In this connection, statutory exemption of property from sale under execution may be held limited to civil cases and not to apply to executions for fines and costs in criminal proceedings.

"In the absence of a statute making the costs a part of the penalty, a defendant may not be imprisoned for nonpayment of costs. Statutes authorizing such imprisonment are generally upheld on the basis that costs in a criminal action are not debts within the meaning of the constitutional prohibition against imprisonment for debt. Moreover, imprisonment for costs incurred in a criminal prosecution is generally considered not to be cruel and unusual punishment."

As noted in *Kelly*, costs are not usually specified as part of the penalty in the various sections of Article 27 of the Maryland Code, which deals with Crimes and Punishment.[2] On the other hand, Article 38, Section 1, quoted above, provides that when a person is found guilty of *any* offense referred to therein, "he shall be sentenced to the fine or penalty prescribed by such act of Assembly or ordinance and to the costs of his prosecution; and in default of payment thereof he shall be committed * * *". Whether Sections 1 and 4 of Article 38 would apply to every statute or whether different provisions in a particular statute would take precedence over the general provision has not been determined by the Maryland courts.

The stipulation in the present case shows that despite the apparent clarity of that provision it is not being applied uniformly, although the present lack of uniformity is different from that found in *Kelly*.[3] That lack of uniformity often creates a serious discrimination; e. g., when a man is sentenced to pay a fine

2. In a few sections costs are specifically made a part of the penalty. See, e. g., Article 27, Sections 121, 122, 124, 154, 172, 268, 275, 320; 355F, 406, 452, 470, 481, 576, 577. See also Article 5, Section 39. Some sections specify limits of confinement different from the limits contained in Article 38, Section 4. See, e. g., Article 27, Sections 122, 124, 183, 189, 213, 275, 320, 405, 406, as well as Article 66–1/2, Section 338, and Article 5, Section 39. Courts are given the power to suspend the imposition of sentence and to impose appropriate terms as to costs by Section 639 of Article 27.

3. The following facts have been stipulated in the present case:

In the case of persons sentenced to one year or more and costs in the Municipal Court of Baltimore City, a detainer is lodged with the prison authorities so that such person can be transferred to jail at the close of his prison sentence to serve time for costs.

In the People's Court of Prince George's County, the People's Court of Montgomery County, the People's Court of Howard County and the Baltimore County Magistrate's Courts costs are waived in accordance with Kelly v. Schoonfield, 285 F.Supp. 732.

In the People's Court of Anne Arundel County in the case of an indigent on commitment for fine and costs, the Court directs that said indigent is not to serve time for the costs assessed but notes that in the instance where such a defendant, after serving some time, attempts to pay the remainder of his fine, he must then pay the costs.

Generally, on the Circuit Court level in Prince George's County, Baltimore City, Anne Arundel County and Howard County, an indigent is required to serve time for fine and costs.

of $100 and $5 costs, the inclusion of costs in the calculation prescribed by Article 38, Section 4, increases from 30 days to 52 days the amount of time which must be served.

This Court, therefore, declares that under the stipulated facts in this case the State cannot constitutionally include costs in computing the time to be served under Article 38, Section 4. An injunction to that effect will be issued against the defendant Warden.

## II.

■ This Court held in *Kelly* that the confinement of indigents, as well as others, for a limited period because of nonpayment of fines does not deny them the equal protection of the laws and does not amount to cruel and unusual punishment.

Although the question of commitment for nonpayment of fines has been more fully developed in the present case than in *Kelly*, the present record is insufficient to permit the Court to do more now than deny defendants' motion to dismiss.

The parties have stipulated the type of offense for which each of the named plaintiffs was convicted, but the particular statutes or ordinances violated have not been specified. The Maryland statutes dealing with the limits of confinement for default in payment of fines often overlap.[4] The record does not contain the judgments and commitments of any of the plaintiffs, although a form said to be in general use in the Municipal Court was discussed at the hearing.

Counsel for plaintiffs argued at the hearing that when the judges of the Municipal Court of Baltimore City impose fines, they do not consider whether the defendant is indigent and whether the period of confinement prescribed in Article 38, Section 4, would be a reasonable period for that defendant under all the circumstances. Counsel for plaintiffs suggested that the entire matter is

handled by the clerk and by the jailer. Counsel for defendants denied this, and plaintiffs offered no evidence to support their contention. Although Article 38, Section 4, does not require the Municipal Court judges to learn whether a defendant is financially able to pay his fine, Section 113(c) of Article 26 and Section 639 of Article 27 enable Municipal Court judges to make appropriate arrangements and conditions, including instalment payments, in the case of a defendant who is found financially unable to pay any or all of his fine at the time of sentencing, and this court cannot and should not assume that they do not do so.

The paucity of facts in the record about the practice of the Municipal Court in this area makes it difficult to handle the matter in a class suit, as plaintiffs would have us do, until the facts are more fully developed.

Nevertheless, some further discussion of the legal questions involved is appropriate.

We adhere to the legal principles upon which we based our decision in *Kelly*. In the light of the fuller argument presented herein, we restate those principles as follows:

■ A statute is not unconstitutional merely because it provides that a defendant who has been sentenced to pay a fine shall be committed to jail if he does not pay the fine. A judgment imposed pursuant to such a statute is not unconstitutional merely because the defendant is indigent. United States ex rel. Privitera v. Kross, 239 F.Supp. 118 (S.D.N.Y.1965), aff'd 345 F.2d 533 (2 Cir. 1965), cert. den., 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed.2d 163 (1965). In certain circumstances, however, and for various reasons, a judgment imposed pursuant to such a statute may deny an indigent defendant the equal protection of the laws or violate other rights protected by the Eighth or the Fourteenth Amendment. See, e. g., People v. Saf-

---

4. Compare Article 38, Section 4, with the statutes cited in footnote 2 above. See also Article 26, Section 113(b) and (c), and Article 52, Section 18.

fore, 18 N.Y.2d 101, 271 N.Y.S.2d 972, 218 N.E.2d 686 (1966).

■ A statute is not unconstitutional merely because it establishes a fixed correlation between the amount of the fine and the number of days to be served in default of payment of the fine. The reasonableness of a fixed correlation may under appropriate circumstances be subject to challenge (a) on the face of the statute, or (b) because of the manner in which it is applied by the courts generally, or (c) because of the manner in which it is applied in a particular case.

■ Among the factors which may be considered by a court in ruling on a challenge to the constitutionality of such a correlation are: (1) the purpose of the statute, as stated by the legislature or construed by the courts of the State; and (2) whether the default in payment was due to wilfulness or to indigency.

It is argued that the automatic conversion by the statute of $2.00 of fine into one day in jail contravenes the due process clause and makes the act void on its face. The minimum wage scale has been suggested as the proper standard to be applied. But no evidence has been offered in this case to indicate whether the indigent plaintiffs here (or others similarly situated) are employed, or are receiving unemployment or social security benefits, or are on welfare. It would not be suprising if the actual facts were to show that at the time these crimes were committed some of these plaintiffs and many other indigents confined under this statute were receiving no wages nor other benefits at the time that their crimes were committed.

On the other hand, a fuller record might well convince this Court that the $2.00 figure is constitutionally inadequate. But we are not willing without more facts to adopt the Procrustean approach that the minimum wage scale is the strict measure of the constitutionality of this statute. We cannot assume on the meager record before us that those indigents adversely affected by the statute are employed or employable persons and that the standard of constitutionality is therefore the amount of the minimum wage. At this time, we are not prepared to state flatly that there is no rational basis in fact for the figures adopted by the legislature (presumably after a study of facts not before this Court). Nor do we feel foreclosed from requiring a further hearing merely because both parties have submitted this case on affidavits. Before we would take the step of voiding on its face or otherwise a statute enacted and recently reconsidered by the Maryland State Legislature, we would wish to have more than assumed facts before us.

A statute which enables or requires a court to fix in each case the number of days to be served in default of payment of a fine avoids many of the problems inherent in statutes which impose fixed ratios. For example, the New York statute involved in United States ex rel. Privitera v. Kross, *supra*, provided imprisonment for nonpayment of a fine at a rate to be fixed by the judge, which could not exceed one day for every one dollar of the fine. The judge, in fact, fixed the rate in that case at one day for every eight dollars of the fine, no doubt because of the minimum wage law then in effect. The New York law has since been amended, but still permits the judge to tailor the sentence to the individual defendant. See New York Code of Criminal Procedure, Section 470-d.[5]

---

5. "§ 470-d. Fines; how collected
"1. When the court imposes a fine upon an individual the court may direct as follows:
"(a) That the defendant pay the entire amount at the time sentence is imposed;
"(b) That the defendant pay a specified portion of the fine at designated periodic intervals, and in such case may direct

that the fine be remitted to a probation officer who shall report to the court on any failure to comply with the order;
"(c) Where the defendant is sentenced to a period of probation as well as a fine, that payment of the fine be a condition of the sentence.
"2. If the defendant fails to pay the fine as directed, the court may direct

Defendants' motion to dismiss the complaint is hereby denied.

Counsel should agree within ten days upon the form of an injunction to give effect to the ruling in section I of this opinion.

WINTER, Circuit Judge (concurring in part and dissenting in part):

I agree with the result reached by the Court with respect to costs, but I would place the decision on an additional, broader ground. I dissent from the result reached by the Court with regard to fines; I would hold Article 38, §§ 1 and 4, unconstitutional on their face as denying due process of law, and would enjoin their enforcement. I state my reasons, therefore, in concurrence and in dissent.

### I

In *Kelly* we found a denial of equal protection in the manner in which the statutes were applied with regard to costs. It was unnecessary for us to resort to any broader basis of decision. In the instant case there is another, although different, form of unlawful discrimination in the manner in which the statutes are being applied. One form of unlawful discrimination, once struck down, immediately followed by another form of unlawful discrimination, leads me to prefer to rest my decision on the broader basis that imprisonment for nonpayment of costs is constitutionally impermissible under the due process clause, and not to rest content solely in invoking the equal protection clause.

In Maryland, costs in a civil action "are 'a pecuniary allowance made to the successful party (and recoverable from the losing party) for his expenses in prosecuting or defending a suit' * * *. [C]osts (which generally do not include attorney's fees) are given by law as an indemnity and are not imposed as a punishment upon one who pays them or as bonus to the one who receives them * * * [and] costs 'are not awarded as a gratuity or emolument for inconvenience sustained, but constitute compensation for expense * * *.'" Weiner v. Swales, 217 Md. 123, 141 A.2d 749, 750 (1958).

To my mind, costs, in a criminal action, are no different, except that they are recoverable by the State rather than a private litigant. Traditionally, they depend upon such considerations as whether the convicted defendant pleaded guilty or insisted upon trial, and, if the latter, whether a jury trial was demanded or waived, what subpoenas for the production of witnesses were issued and like considerations. Whether denominated punishment or not, the amount of

that he be imprisoned until the fine be satisfied and the court must specify the period of any such imprisonment subject to the following limits:

"(a) Where the fine was imposed for a felony, the period shall not exceed one year;

"(b) Where the fine was imposed for a misdemeanor, the period shall not exceed one-third of the maximum authorized term of imprisonment;

"(c) Where the fine was imposed for a violation or a traffic infraction the period shall not exceed fifteen days; and

"(d) Where a sentence of imprisonment as well as a fine was imposed the aggregate of the period and the term of the sentence shall not exceed the maximum authorized term of imprisonment.

"3. In any case, where the defendant is unable to pay a fine imposed by the court, the defendant may at any time apply to the court for resentence. In such case, if the court is satisfied that the defendant is unable to pay the fine, the court must, notwithstanding any other provision of law, revoke the entire sentence imposed and must resentence the defendant. Upon such resentence, the court may impose any sentence it originally could have imposed except that the amount of any fine imposed shall not be in excess of the amount the defendant is able to pay.

"4. Notwithstanding that the defendant was imprisoned for failure to pay a fine or that he has satisfied the period of imprisonment imposed, a fine may be collected in the same manner as a judgment in a civil action. It shall be the duty of the district attorney to institute proceedings to collect such fine." Added L.1967, c. 681, § 61, eff. Sept. 1, 1967.

costs is determined not by the gravity of the offense or conditions peculiar to a defendant's criminal culpability, but solely to reimburse the State for successful criminal prosecution. "Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and *this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute."* Giaccio v. Pennsylvania, 382 U.S. 399, 402, 86 S.Ct. 518, 520, 15 L.Ed.2d 447 (1966) (emphasis supplied).

Granted the objective of reimbursement of the State's costs, if Maryland would not hold imprisonment for nonpayment of costs in violation of its Constitution, Article III, § 38,[1] banning imprisonment for debt, I would hold such imprisonment invalid under the due process clause of the Federal Constitution for the reasons discussed in Part II of this opinion.[2]

## II

This Court held in *Kelly* that the confinement of indigents, as well as others, for a limited period because of nonpayment of fines does not deny them the equal protection of the laws and does not constitute, in the abstract, cruel and unusual punishment. "The commitment of convicted defendants who default in the payment of their fines, whether from inability or unwillingness to pay, imposes a burden upon a defined class to achieve a permissible end in which the State has a vital interest; i. e., that persons who are found guilty of breaking the laws shall receive some appropriate punishment, to impress on the offender the importance of observing the law, in the hope of reforming him, and to deter other potential offenders from committing such offenses in the future. * * * Article 38, sec. 4 is a constitutionally permissible way of accomplishing the desired results; the class established thereby and the distinction drawn therein have 'some relevance to the purpose for which the classification is made', and are not illegally discriminatory." Kelly v. Schoonfield, *supra,* 285 F.Supp., at 737. Generally, I still adhere to these views. On further reflection, however, I think that Article 38, §§ 1 and 4, must be declared invalid on their face as denying due process of law.

As the majority states, counsel for plaintiffs argued at the hearing that when the judges of the Municipal Court of Baltimore City impose fines, they do not consider whether the defendant is indigent and whether the period of confinement prescribed in Article 38, § 4, would be a reasonable period for that defendant under all the circumstances. Counsel for plaintiffs suggested that the entire matter of calculating the requisite period of imprisonment is handled by the clerk and by the jailer. Counsel for defendants denied this, but counsel for neither party offered any evidence to support his contention. Although Article 38, § 4, does not require municipal court judges to learn whether a defendant is financially able to pay his fine, Article 26, § 113(c), and Article 27, § 139, enable municipal court judges to make appropriate arrangements and conditions, including installment payments, in the case of a defendant who is financially unable to pay any or all of his fine at the time of sentencing. While

---

1. See, however, State v. Mace, 5 Md. 337 (1854); Ruggles v. State, 120 Md. 553, 87 A. 1080 (1913).

2. United States ex rel. Caminito v. Murphy, 222 F.2d 698, 700 (2 Cir.), cert. den., 350 U.S. 896, 76 S.Ct. 155, 100 L.Ed. 788 (1955), deems imprisonment "involuntary servitude," even in the absence of a statute encouraging prison labor such as was condemned in United States v. Reynolds, 235 U.S. 133, 35 S.Ct. 86, 59 L.Ed. 162 (1914), sustainable under the Thirteenth Amendment only where the servitude is "punishment for crime whereof the party shall have been duly convicted." Whether denominated "penal" or "additional punishment," or not, where costs are to reimburse the State and are fixed by expenses to the State, the *Murphy* case suggests that incarceration for nonpayment is in violation of that amendment.

I am loathe to believe that municipal court judges do not consider whether the defendant is indigent, and whether the period of confinement prescribed in Article 38, § 4, would be a reasonable period for that defendant under all the circumstances, the fact is that, on their face, the statutes do not *require* that a judge make any such determination or to give that consideration, and therein lies the basis for constitutional objection.

I start with the proposition that incarceration is generally regarded as a harsher sentence than the mere payment of a fine. Castle v. United States, 399 F.2d 642, 651 (5 Cir. 1968). See also, Wildeblood v. United States, 109 U.S. App.D.C. 163, 284 F.2d 592 (1960) (dissenting opinion). Judicial experience amply demonstrates that, assuming financial ability to pay, it is the extremely rare defendant who will not pay any reasonable fine rather than to risk loss of his liberty for one day.

When, in the case of defendants unable to pay, it becomes necessary to convert the deterrence and rehabilitation to be achieved by imposition of a fine into an appropriate period of incarceration to reach the same objectives, there is little logic or reason to assume that a day's loss of liberty has a monetary value of $2.00.[3] The minimum wage under the Fair Labor Standards Act for a normal working day is far in excess of this amount. 29 U.S.C.A. § 206(a). Even with regard to employment not covered by that Act, I am not so blind as to say that $2.00 represents a fair day's wages under current conditions. Cf., People v. Saffore, 18 N.Y.2d 101, 104, 271 N.Y.S.2d 972, 218 N.E.2d 686 (1966).

Yet Article 38, § 4, prescribes as equivalents a day's loss of liberty and $2.00. The result is that if the statute's table of equivalents is applied blindly,

as, for example, when the sentencing judge is not aware of indigency and thus not aware of the full rigors of the statute's operation, punishment considerably harsher than may be warranted by the gravity of the offense and due regard to the circumstances peculiar to a given defendant may result. The magnitude of this potential invidious effect is aggravated when we consider that the imposition of a fine in the first instance constitutes an adjudication that the circumstances of the offense and the factors peculiar to the defendant do not call for the harsher penalty of incarceration.

The trend of modern attitudes toward sentencing is that the punishment ought to be devised to fit the defendant as well as the crime. Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), amply demonstrates the point. The issue in the case was whether due process restricts as sentencing judge only to that evidence which would be admissible at the trial or whether he may also consider other factors presented in a form not constituting admissible evidence. In holding that the due process clause did not restrict consideration of all relevant truthful information in whatever form presented, the Court, *inter alia*, said: *"The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. * * * Today's philosophy of individualizing* sentences makes sharp distinctions, for example, between first and repeated offenders. Indeterminate sentences, the ultimate termination of which are sometimes decided by non-judicial agencies have to a large extent taken the place of the old rigidly fixed punishments. The practice of probation which relies heavily on non-judicial implementation has been accepted as a wise policy. * * * *Retri-*

---

3. Of course, by prescribing maximum imprisonment of 30 days for fines not exceeding $100, 60 days for fines exceeding $100 but not exceeding $500, and 90 days for fines exceeding $500, § 4 in reality prescribes a fluctuating scale of equivalents under which the equivalents may

be exactly or more than $2.00 per day, depending upon the amount of the fine. This fact suggests an equal protection objection. In any event, I speak only to the announced equivalent of $2.00 per day.

*bution is no longer the dominant objective of the criminal law. Reformation and rehabilitation have become important goals of criminal jurisprudence."* 337 U.S., at 248–249, 69 S.Ct., at 1083–1084 (footnotes eliminated) (emphasis supplied).

It is true that *Williams* considered only what due process does not prevent and the issue before us is what due process requires. Other authorities point to the answer. In Stevens v. Warden, Maryland Penitentiary, 238 F.Supp. 334, 338 (D.Md.1965), aff'd, 382 F.2d 429 (4 Cir. 1967), cert. den., 390 U.S. 1031, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968), this Court remarked: "the failure of a judge to give the defendant or his counsel a reasonable opportunity to present matters in mitigation of sentence, coupled with other circumstances, such as the failure of defendant's counsel to seek such an opportunity, may amount to a deprivation of due process." In the same case, the Court of Appeals termed the imposition of standard sentences by a sentencing judge "a negation of judicial responsibility." 382 F.2d, at 432. *How much more aggravated is the case under the statute in question when the transformation from monetary penalty to loss of liberty may occur without judicial intervention.*

As stated by the Supreme Court, the concept of due process "stem[s] from our American idea of fairness," Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954), and is "measured by * * * that whole community sense of 'decency and fairness' that has been woven by common experience into the fabric of acceptable conduct," Breithaupt v. Abram, 352 U.S. 432, 436, 77 S.Ct. 408, 410, 1 L.Ed.2d 448 (1957). As the bulwark against governmental infringement of those personal immunities which are "fundamental" and "implicit in the concept of ordered liberty," (Rochin v. California, 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952)), the due process clause bars "enactments that shock the sense of fair play—which is the essence of due

process," Galvan v. Press, 347 U.S. 522, 530, 74 S.Ct. 737, 742, 98 L.Ed. 911 (1954). It is well to remember, also, that the concept of due process is not static but is flexible and can accommodate itself to the times and the results of human experience. Familiar examples of this process include the evolutionary development from Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), to Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and its progeny, and from Betts v. Brady, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), to Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

Of course, it is perhaps true that not all members of the present Supreme Court fully subscribe to the notion that due process has primary reference to elemental and basic fairness (see, e. g., Griswold v. Connecticut, 381 U.S. 479, 510–526, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (dissenting opinions, Black and Stewart, JJ.). Nevertheless, the fact is that a majority of the Court has on numerous occasions declared invalid State laws or procedures which transgressed that concept. See cases collected in footnote 4, dissenting opinion, *supra.* Griswold v. Connecticut, 381 U.S., at 511, 85 S.Ct. 1678. See also, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Furthermore, numerous lower federal courts have embraced the notion that the essence of due process is fundamental fairness. See, e. g., Crawford v. Bounds, 395 F.2d 297, 314 (4 Cir. 1968) (Sobeloff, J., concurring), judgment vacated on other grounds, 393 U.S. 76, 89 S.Ct. 234, 21 L.Ed.2d 62 (1968); Howard v. United States, 372 F.2d 294, 301 (9 Cir.), cert. den., 388 U.S. 915, 87 S.Ct. 2129, 18 L.Ed.2d 1356 (1967); Cox v. Burke, 361 F.2d 183, 186 (7 Cir.), cert. den., 385 U.S. 939, 87 S.Ct. 304, 17 L.Ed.2d 218 (1966); Watson v. Patterson, 358 F.2d 297, 298 (10 Cir.), cert. den., 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103 (1966); United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844, 855–856 (2 Cir. 1965) (Mar-

shall, J.), cert. den., Mancusi v. Hetenyi, 383 U.S. 913, 86 S.Ct. 896, 15 L.Ed.2d 667 (1966); United States ex rel. Mishkin v. Thomas, 282 F.Supp. 729, 737–738 (S.D.N.Y.1968); United States v. American Honda Motor Co., 273 F.Supp. 810, 819 (N.D.Ill.1967).

Viewed in the light of the evolutionary development of our concepts of sentencing practices, I think that there is only one result which can be reached in this case. Except for life, there is no greater personal immunity than liberty. Any comparison between a deprivation of liberty and the financial burden imposed by a fine upon a given individual is at best an equation of inherently dissimilar elements. While I would not now prescribe what might be an acceptable equivalent, I have no difficulty in concluding that $2.00 per day is not acceptable.[4] If Maryland insists upon a formula which automatically translates fines into imprisonment without judicial intervention, fundamental fairness commands that the factor of translation be formulated on a rational basis so that the burden upon an indigent defendant does not increase dramatically when he is forced, by circumstances beyond his control, to subject himself to the alternative punishment of imprisonment.[5]

Unlike the statute considered in Privitera v. Kross, 239 F.Supp. 118 (S.D.N.Y.), aff'd., 345 F.2d 533 (2 Cir.), cert. den., 382 U.S. 911, 86 S.Ct. 254, 15 L.Ed. 2d 163 (1965), and the more recent New York enactment which the majority impliedly urges upon the Maryland legislature, the Maryland statutes prescribe no required intervention by a judicial officer in the translation of monetary punishment into confinement so that the inadequacy of the equivalents may be compensated for and the sentence individualized to respond to the factors appropriately to be considered in determining the duration of the loss of liberty. Thus, I would declare the statutes invalid and enjoin their enforcement.

### III

The opinion of the majority denies defendants' motion to dismiss the complaint with regard to imprisonment for nonpayment of a fine, and this notwith-

---

4. See, People v. Collins, 47 Misc.2d 210, 261 N.Y.S.2d 970 (Sup.Ct.1965), modifying on appeal a prison sentence for nonpayment of a fine:

    "It is only if we equate the payment of the fine with the additional period of detention in prison that both men [the indigent and the non-indigent] can be said to stand equal before the law. An equation of one day of a man's liberty in jail for every one dollar of the fine, in this enlightened era, should be examined very carefully before this form of equality of treatment is endorsed." 261 N.Y.S.2d, at 973.

    Greenawalt, Constitutional Law, 18 Syracuse L.Rev. 180, 196–7 & n. 109 (1966), (suggesting that equivalence of $10 or $25 per day of imprisonment not be sustained in absence of evidence that sentencing court or legislature considered problem of fairness). See also, Goldberg, Equality and Governmental Action, 39 N.Y.U.L.Rev. 205, 221 (1964).

5. While the majority proclaims its open-mindedness as to the constitutional adequacy of the $2.00 equivalent, it brands as "Procrustean" the alleged suggestion that the minimum wage scale is the strict measure of the constitutionality of the statutes. The majority misreads this expression of my views. I am not certain that even an equivalency of fine to incarceration at minimum wage rates would be constitutionally acceptable. The point is that when loss of liberty is to be suffered for inability to respond to pecuniary punishment, how rational and how fair is a measure which automatically requires the loss of *a day's* liberty for non-payment of the portion of a fine only slightly more than the rate prescribed by law for *one hour's* work? To me it matters not whether the defendant is or is not employed, or is or is not the recipient of social security, unemployment or welfare benefits. Whether he is presently working, whether he is retired for age or disability, or whether he is unemployed or disabled from working without retirement benefits, a measure of the minimum value of his time and efforts in the market has been fixed by Congress. A lesser measure for present purposes is not justifiable when he must forfeit liberty. The majority may require greater proof of what should be obvious, but I am presently persuaded.

standing that the parties have submitted the case to us on certain stipulations for final decision and the majority accepts the submission as to costs. The majority appears to contemplate further proceedings. Of what nature and of what scope I cannot surmise. What is before us is sufficient for final judgment; further facts need neither to be assumed nor proved. If the statute is invalid on its face, certainly it cannot be saved by benevolent administration, even assuming that every judicial officer of the State of Maryland appears before this Court and testifies that he always makes a determination of indigency so that he fixes the fine in an amount which, under the rule of $2.00 per day, results in a period of confinement, that, in his discretion, he deems appropriate. If the statute is invalid on its face, as I believe, the Court should speak now and restore those, invalidly restrained, to their liberty.